STATE EX REL. TINGLEY, Respondent, vs. GURDA, Inspector of Buildings, Appellant.

*June 2—October 11, 1932.*

For the appellant there were briefs by *Max Raskin,* city attorney, and *Edwin W. Knappe,* assistant city attorney, and oral argument by *Mr. Knappe.*

*George A. Affeldt* of Milwaukee, for the respondent.

The following opinion was filed June 20, 1932:

OWEN, J.   The relator is the owner of premises located in block No. 15, in North Milwaukee Townsite Company's Addition No. 1, now a part of the city of Milwaukee.   This block is traversed by Mud creek, is bounded on the east and west by premises devoted to industrial purposes, on the south by the right of way of the Chicago, Milwaukee, St.

Paul & Pacific Railroad Company, and on the north by Cameron avenue. Relator's premises lie east of Mud creek in said block. This block was originally a part of the city of North Milwaukee, which has now been annexed to and is a part of the city of Milwaukee. The zoning ordinance of the city of North Milwaukee included this block within an industrial area. After the annexation of North Milwaukee to the city of Milwaukee, the city of Milwaukee passed a zoning ordinance which restrained the use of this block and relator's property to residential purposes, and made said block a part of a residential area. By reason of this ordinance the defendant, as inspector of buildings in the city of Milwaukee, refused a license to the relator to equip said premises for use as a stone yard and plant.

Relator claims the ordinance upon which the building inspector relies is unconstitutional. The lower court so held, and issued a peremptory writ of *mandamus* commanding the defendant to issue such permit.

Upon the trial the introduction of the ordinance of the city of Milwaukee constituting relator's premises a part of a residential area was apparently inadvertently overlooked, and the ordinance upon which the defendant relies was not introduced in evidence. While this was an unfortunate inadvertence, it does not constitute ground for reversal, as contended by the defendant. The defendant justifies his refusal of the permit by virtue of this ordinance. The petition alleges and the return admits the adoption of an ordinance by the city of Milwaukee on the 11th day of February, 1929, zoning said premises as a part of a residential area. No question was raised as to the existence of this ordinance at any time during the trial. The existence of the ordinance being thus assumed probably accounts for the failure of either relator or defendant to introduce it. However, inasmuch as the defendant relied upon its provisions

as a justification for the refusal of the permit, the burden of its introduction rested upon him as well as the relator. At any rate, if he is to rely upon the provisions of the ordinance as a justification for his official conduct, it is not very apparent how he can urge a reversal on the ground that the ordinance was not introduced.

Appellant further contends that the peremptory writ of *mandamus* should not have issued because the relator did not pursue other adequate remedies provided by law for the attainment of his alleged rights. The remedy to which he refers is that provided by sec. 62.23 (8), Stats., which provides for a review by the board of appeals, which is established by ordinance of the city of Milwaukee, of any determination made by the building inspector. The relator did appeal from the refusal of the defendant to grant the permit, to the board of appeals. It seems that the board of appeals announced, rather informally, that it had no jurisdiction to pass upon the constitutionality of the ordinance, for which reason they failed to set a time for the hearing of the appeal before this action was commenced.

The power of this board is specified in sec. 62.23 (8) (b) as follows:

"The board of appeals shall review any order requiring decision or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to subsections (1) to (7) of this section. Such board shall also hear and determine all matters referred to them or upon which they are required to pass under any ordinance of the council adopted pursuant to such subsections. The concurring vote of four members of such board shall be necessary to reverse any order requiring decision or determination of any such administrative official or to decide in favor of the applicant any matter upon which they are required to pass under any such ordinance or to effect any variation of such ordinance. Every decision of such board shall, however, be subject to review by *certiorari*. Such appeal may be taken by any person aggrieved or by any officer, department, board or bureau of the city."

The gist of the power thus conferred is that of reviewing the decision or determination of administrative officials charged with the enforcement of such ordinances. The terms of the ordinance itself necessarily form a basis of administrative action, and whether the action of the administrative officer, as, for instance, the building inspector, is in conformity with the requirements of the ordinance, is at least one of the matters which may be reviewed by the board of appeals. We find no express provision in the statute conferring upon the board of appeals power to revise, amend, or repeal the ordinance. That may be implied, however, from the provision that "The concurring vote of four members of such board shall be necessary to reverse any order requiring decision or determination of any such administrative official or to decide in favor of the applicant any matter upon which they are required to pass under any such ordinance *or to effect any variation of such ordinance.*" The extent or the manner in which the board of appeals might "effect any variation of such ordinance" is left very much to guesswork. However, if it be assumed that by this provision it was intended to confer upon the board of appeals power to waive exact compliance with some detail of the ordinance, it would hardly go to the extent of authorizing the board to work substantial amendments to the ordinance, or to ignore it altogether, or to accomplish its repeal. The ordinance stands as the act of the legislative body of the city, and it is hardly to be assumed that the legislature intended to clothe a mere administrative agency with the power to repeal the legislative acts of the city council. Similarly, it is not to be assumed that the legislature intended to confer upon the board of appeals the judicial power to declare the ordinance unconstitutional.

In seeking the remedy of *mandamus* the relator relies on the fact that the ordinance is unconstitutional, under which circumstances an appeal to the board of review would afford him no relief whatever, as the board of appeals could not

ignore the ordinance because it might consider it unconstitutional. The remedy existing under ordinary circumstances by an appeal to the board of review would not afford the relator relief, as his only contention is that the ordinance relied upon by the defendant is unconstitutional. It has been held that zoning boards of adjustment are not created as appellate bodies, and that legal or constitutional questions involved in zoning requirements are not a subject matter for the determination of such boards, but must be presented for consideration to the proper legal forum. It seems that, generally, their powers of review are limited to practical difficulties, or unnecessary hardship, in the way of carrying out the strict letter of the law. *Municipal Gas Co. v. Nolan,* 121 Misc. 606, 201 N. Y. Supp. 582; *Losick v. Binda,* 102 N. J. L. 157, 130 Atl. 537; *Builders' Realty Corp. v. Bigelow,* 102 N. J. L. 433, 131 Atl. 888. It is our conclusion that in the instant case an appeal to the board of review would afford the relator no adequate relief, for which reason his resort to the remedy of *mandamus* is proper.

Coming now to the merits of the controversy, we find no suggestion in the record that the purposes to which the relator proposed to devote his premises constituted, or was likely to constitute, a nuisance. The restriction which it is sought to impose upon his use of the premises is not based on any such proposition. The restriction arises from an enforcement of the so-called zoning ordinance. We have upheld the general validity of zoning ordinances as a proper exercise of the police power. *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N. W. 451. Such ordinances are upheld on the theory that the orderly development of a city promotes the welfare, happiness, and prosperity of its citizens, and that the restriction placed upon the use of property finds just compensation in like restriction placed upon the use of other property in the neighborhood. *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159. The whole idea

of the zoning scheme is to set aside areas for specific uses and to protect them from encroachments in the form of other uses inconsistent with the uses to which they are dedicated. The residential area is to be protected from the encroachment of business and industry. The business area is to be protected from the encroachment of industry. This because the encroachment of business and industry upon a residential area detracts from the desirability of such area for residential purposes, and the encroachment of industry upon the business area detracts from the desirability of such business area.

In this case the common council of the city of Milwaukee has condemned a block of land, of which relator's premises constituted a part, to a residential use in a locality absolutely surrounded by property devoted to uses incompatible with and repugnant to a use for residential purposes. The scenic beauties of Mud creek do not rescue the premises for residential purposes. On the contrary, the presence of the creek is but an additional abomination. The character of the creek is well indicated by its name. The location and environment of these premises make them valuable for industrial uses. The trial court found that the value of the premises for such uses ranged from $15,000 to $19,350, while the value of such premises for residential purposes was approximately $3,000. This is a most extraordinary situation. Here is a block of land in an industrial center, valuable for industrial purposes, condemned to a use for residential purposes, and for such purposes it is comparatively valueless. This situation should not result and cannot result from a *bona fide* administration of the zoning powers of the city. This situation in itself is sufficient to condemn the ordinance as an unreasonable exercise of power. In an effort to find the purpose of such a method of zoning, we find suggestions in the record that the city planning commission contemplates sometime in the future a boulevard

along Mud creek and, with that in view, a zoning regulation has been promulgated destroying the value of the property which will later have to be taken for that purpose, so that the city may be able to carry out the boulevarding project with less expense to itself. While it may not be proper to thus interpret the motives and purposes actuating the city council in enacting the zoning ordinance, where such an unusual situation is found as appears here, such testimony may be given some weight. If such should be the purpose, it must reflect most seriously upon the good faith of the council and furnishes an opportunity to give warning that such maladministration of power may result in deprivation thereof.

The zoning power is one which may be used to the great benefit and advantage of a city, but, as this case indicates, it is a power which may be greatly abused if it is to be used as a means to depress the values of property which the city may upon some future occasion desire to take under the power of eminent domain. Such a use of the power is utterly unreasonable and cannot be sanctioned. It is entirely beyond the purpose of the zoning law to condemn a block in the heart of an industrial section to residential purposes only, for which purposes it is largely valueless because of the reason that it is in the heart of an industrial area. We have little hesitation in pronouncing this ordinance, in so far as it places relator's property in a residential district, utterly unreasonable and void, for which reason the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.