ROWLAND and another, Respondents, vs. CITY OF RACINE
and another, Appellants.

*December 9, 1936—January 12, 1937.*

*Cornelius M. Colbert,* city attorney, for the appellants.
*Donald A. Butchart* of Racine, for the respondents.

FRITZ, J.   The judgment under review enjoins the enforcement of a zoning ordinance as against two lots owned by plaintiffs, and located at the southwest corner of the intersection of Washington and Lathrop avenues in the city of Racine.   The following facts, established by the evidence, were found by the court : The ordinance, as enacted in 1929, established certain residence districts within which no factory building, warehouse, public garage, oil filling station, mercantile establishment, funeral parlor, morgue, flat, or apartment building should be erected, established, or maintained; but it also provided that the continued use of a building or land for an industry, or for which it was lawfully used at the time the ordinance took effect, was not prohibited thereby. However, the latter provision was amended in 1932 so as to provide, in relation to land or a building so used in an established residence district, when the ordinance took effect, that no extension or improvement except ordinary repairs and maintenance should be made for any use or in any manner prohibited by the zoning ordinance.   Under that ordinance the plaintiffs' lots, and all other land located in the four blocks cornering on the intersection of Lathrop and Washington avenues, and some adjacent territory have been, since its enactment, within a residence district established thereby, with

the exception that, by an express provision in the ordinance, the lot at the northeast corner of the intersection was not included as part of that residence district and has been occupied continuously by a gasoline filling station. Both Washington and Lathrop avenues are sixty-six feet wide, and are main thoroughfares through the city. They connect with the principal highways to the north, south, and west of the city, and the vehicular traffic at the intersection in question is very heavy. Plaintiffs' lots have a frontage of eighty-seven feet on Washington avenue, and extend south one hundred twenty-five feet along Lathrop avenue to a ten-feet-wide alley. They have been occupied continuously since prior to 1924 by a small dwelling house, adjacent to the alley, and a small store and gasoline filling station on the northerly portion. On appraisals in probate proceedings the property was valued at $15,500 in 1924, and at $15,000 in 1929. It was sold for $11,000 on land contract in 1930, and the plaintiffs acquired it subsequently at a cost of $8,333.74. At the time of the trial, the value of the land was $6,500 to $7,632 for business purposes, but only $1,600 to $2,000 for residence purposes, and the value of the improvements was $1,650.

Along the south line of the ten-feet-wide alley, at the south line of plaintiffs' lots, is a tract of sixteen lots which are owned by a dairy products company, and upon which it has its main plant consisting of a large brick building erected prior to 1926, and a large automobile garage, horse barn, and other buildings, with extensions made thereto since that time. That company employs sixty-five people, and has twenty horse-drawn wagons and ten automobile trucks, which are used in hauling dairy supplies to and from the plant at all hours commencing daily from 2 to 4:30 a. m., depending upon the season; and the plant is operated with considerable noise and smoke in and around the buildings, and all night during the rush seasons. Those sixteen lots have been ex-

cepted by the city from the prohibition of the zoning ordinance, and constitute unrestricted property. The filling station on the lot at the northeast corner was erected in 1928, and on the rear of that lot there is also a three-car garage built in 1925. The lot immediately to the east of that lot is included in the residence district as zoned, but on the rear thereof there is a building which was used for many years as a tin shop, and was recently leased and repaired for use as a dog hospital. Four vacant lots on the southeast corner of the intersection were and are still in the zoned residence district, but the owner was unable to sell them for residence purposes because of the surrounding conditions, and as they could not be used or sold by him for business purposes because of the zoning restrictions, he finally sold them to the defendant city for $8,000 and it is erecting thereon a building to house fire apparatus. Four lots on the northwest corner of the intersection are owned by Mathew Andis and wife, who erected a substantial dwelling thereon in 1927. Those lots are in a platted subdivision, which, with two other subdivisions immediately to the west, extend six blocks west and four blocks north of that corner, and were restricted in platting to use for one-family residences, of at least a specified minimum cost.

In December, 1935, the plaintiffs petitioned the common council of the city for the removal of their premises from the residence district and requested that they be restored to their former status of business property. Andis and wife filed a petition in opposition, and plaintiffs filed another petition, signed by eighteen persons owning twenty-two lots on Washington avenue, within two blocks of plaintiffs' property, in which they favored the granting of plaintiffs' request. The petitions were referred by the council's committee of the whole to the city's plan commission, which recommended granting the petition and reported its reasons therefor. Thereupon the committee of the whole recommended that

the petition be granted and the council adopted that recommendation, but then refused to adopt a resolution directing the drafting of an ordinance to effect the prayer of plaintiffs' petition.

In connection with those facts the court also found and concluded that plaintiffs' lots are, and prior to the enactment of the zoning ordinance were, in the center of a natural light manufacturing and retail business area, which is necessary in that location for the service of the privately restricted residence additions to the north and west thereof, and other surrounding residence property; that there is no compensation to the plaintiffs for the limitation placed upon the use of their premises in the nature of benefits from like limitations imposed upon the surrounding premises; and that the continued enforcement of the ordinance with plaintiffs' property retained in the residence district causes special damage to them, in that their premises cannot be maintained in their present condition, or practicably be repaired, or used or sold for residence purposes, and cannot be sold to be improved for business purposes because of the enforcement of said zoning ordinance, and, therefore, the value of the premises for the uses for which they are suitable is reduced to almost twenty-five per cent thereof by reason of the enforcement of said ordinance; and that the continued enforcement thereof will cause irreparable damage to the plaintiffs. That such action by the city was and is arbitrary, unjustified, unreasonable, and an abuse of its discretion and the exercise of its powers; and the retention of the plaintiffs' property within the residence district deprives them of their property without due process of law, and denies to them the equal protection of the law, in violation of the state and federal constitutions.

The relevant evidence fully warranted those findings and conclusions, and the judgment which was entered, perpetually enjoining the city and its officers from enforcing that ordinance as against those premises of the plaintiffs. That judg-

ment must be sustained because the ordinance, in so far as its operation in its present form in respect to plaintiffs' property is concerned, is clearly so discriminatory, arbitrary, and unreasonable that it is unconstitutional and therefore void. As we held in *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 70, 243 N. W. 317, it is entirely beyond the purpose of a zoning ordinance to condemn a piece of property to solely residential purposes for which it, relatively, is largely valueless because it is and, at the time of the enactment of the ordinance, was clearly in the heart of an industrial or business district; and, therefore, such an ordinance must be held utterly unreasonable and void in so far as it places such property in a residential district.

Evidence was admitted on the trial, subject to objection, upon which the court found and concluded that under the ordinance, as originally enacted and amended from time to time, the common council had made unjustifiable exceptions in respect to certain property located in eight other zoned residential districts, and that in those respects the ordinance was enacted and amended without giving due consideration to a comprehensive zoning plan, the natural location of existing business areas and residential districts, or the welfare of the city's inhabitants and certain other matters. The proof and the court's findings and conclusions in relation to the unreasonable and discriminatory nature of the ordinance and amendments thereto in respect to property located in other districts were not relevant or material in this action. Parties seeking to avoid the effect of a zoning ordinance on the grounds relied upon in this case must show that it is unreasonable in respect to their property, and cannot predicate and sustain their contention on the fact that the ordinance may be unreasonable or discriminatory as to the property of others. Each case, in which the validity of such restrictions is challenged, must be determined on the facts that are directly applicable to the property of the parties complaining. See notes

and cases cited in 86 A. L. R. 664, 665. However, the court's rulings in those respects did not constitute such prejudicial error as to warrant a reversal because the unreasonableness and invalidity of the ordinance in respect to the plaintiffs' property was convincingly and directly established by other competent and relevant evidence relating directly to the plaintiffs' property and the particular district in which it is located.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.