Town of Hobart, Appellant, vs. Collier, Respondent. Same, Appellant, vs. Challe, Respondent.

*January 10—February 4, 1958.*

For the appellant there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur J. Kaftan.*

For the respondents there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, for Charles Collier, and by *Cohen & Parins* of Green Bay, for Norman Challe, and oral argument by *Joseph P. Holman* and *Robert J. Parins.*

MARTIN, C. J. The town of Hobart is a municipality contiguous with the city of Green Bay on the west. On February 5, 1952, the town board adopted an ordinance creating a residential zone in part of the town; the balance was not zoned. On April 15, 1952, the ordinance was amended to extend the residential zone to include the entire town area.

In the preamble of the ordinance as amended its purpose is declared to be the regulation and restriction of the size of buildings and yards, their location and use for trade, industry, residence, or other purposes, the creation of districts for such purposes and the establishment of their boundaries, and provisions for enforcement and penalties. In its specific provisions, so far as material, it creates a residential district with boundaries which are conceded to include the entire town; it provides that buildings and premises shall be restricted to residential use and (sec. II(b)) "Industries and trades which are not commonly known as objectionable and obnoxious may be admitted with the approval of the town board;" it sets out building regulations with respect to setback lines, size of buildings, type of construction, etc.; in sec. V under "Express Exclusion Clause" it provides:

"(d) It shall be unlawful for any person, partnership, firm, or corporation to use any of the premises within the boundaries of the residential district for the purpose of carrying on or maintaining a junk yard, dealing in secondhand metals, paper, rags, secondhand or junked automobiles or

parts, etc. Any person permitting three or more junked or partly torn-down automobiles to remain on the premises for a period of more than thirty days, shall be deemed to be maintaining or carrying on the business of a junk yard and such conduct shall be deemed a violation of this section."

Sec. XII is a severability clause.

Subsequent to the adoption of the ordinance and its amendment, Collier purchased a piece of land within the town 150 feet along County Trunk Highway GE and running 300 feet back from the road. Collier and Challe operated thereon an automobile salvage or junk yard where they haul and store junked automobiles, burn them, and break them up into parts, which parts are sold. Although the evidence as to just when they commenced using the premises as a salvage yard was in conflict, the trial court found their use of the premises did not constitute a pre-existing nonconforming use and that issue is not raised on appeal.

The trial court held the ordinance invalid and dismissed the plaintiff's complaints. According to its findings, the members of the town board and the zoning committee, knowing the defendants were purchasing their property with the intention of operating a salvage yard, adopted the amendment of April 15, 1952, for the express purpose of preventing such use; that they adopted the amendment zoning the entire town as residential with the intention that various businesses would be permitted in the future at the pleasure of the members of the board, the ordinance failing to provide standards or guides with respect to permitting uses other than residential in the future; that the town of Hobart, and particularly the area in which defendants' property is located, is not peculiarly adaptable to residential use; that the ordinance as amended is arbitrary and unreasonable and deprives defendants of their property without due process of law.

We agree with the trial court. The ordinance is invalid on its face. Its purposes, as set out in the preamble, include the

creation of districts for the location and use of buildings and land for "trade, industry, residence, or other purposes." It thereupon creates a residential district of the entire area of the town regardless of its character; it creates no districts for trade or industry or any other purpose than residential. The ordinance does not accomplish, nor does it attempt to accomplish, the purposes set out in its preamble.

The town of Hobart is 12 by 15 miles in area. A railroad runs diagonally through it. Most of the area has been and still is used for farming. That the town area is not in its entirety adaptable to residential use, that it is adaptable to other uses in addition to residential, is recognized in sec. II (b) which provides that trades and industries may be admitted in the future.

In its decision the trial court stated that it had made a view of the premises of the defendants and the surrounding area and stated:

"These premises on which the auto-salvage business is conducted is out in open country where the land is not adaptable to anything but farming, if at all. The terrain is rough, consisting of numerous ravines and hills. Immediately to the north and adjacent to the premises is a home owned by one Andy Knoll, one of the principal objectors. Outside of that residence, there is no other home within the immediate vicinity."

It was the testimony of Andy Knoll that he used his land for farming; that he raised corn, potatoes, all his vegetables, and hay; that the area is full of brush, trees, and hills.

Upon all the evidence the trial court was warranted in finding that the town as a whole and the area of the defendants' premises in particular are not suited for residential purposes.

In *State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W. 317, and in *Rowland v. Racine* (1937), 223 Wis. 488, 271 N. W. 36, it was held that ordinances, in so far

as they classify as residential property which does not have residential value, are unreasonable, unconstitutional, and void. In the *Tingley Case, supra* (p. 69), this court said:

"Here is a block of land in an industrial center, valuable for industrial purposes, condemned to a use for residential purposes, and for such purposes it is comparatively valueless. This situation should not result and cannot result from a *bona fide* administration of the zoning powers of the city. This situation in itself is sufficient to condemn the ordinance as an unreasonable exercise of power."

Defendants purchased their land with the intention of using it as a salvage yard. Plaintiff argues that the town could, under sec. 66.052, Stats., prohibit their operations regardless of zoning classification. Even so, if defendants' property is subject to the zoning ordinance they are deprived of the opportunity to dispose of it for its true value because it must be sold for residence purposes, a use for which it is not fit. The question is not whether the town may prohibit a junk yard, but whether it has validly zoned the area as residential. The trial court found that the area "is not adaptable to anything but farming, if at all." Yet, the ordinance would make it impossible for defendants to sell their property for farming purposes. Plaintiff comments in its brief:

"Undoubtedly on many pieces of land in the township any attempt under the ordinance to prevent the construction of buildings for agricultural use would be unreasonable."

Sec. II (a) of the ordinance, however, restricts all buildings and premises within the town to use as dwellings or incidental thereto.

Sec. II (b) provides that "Industries and trades which are not commonly known as objectionable and obnoxious may be admitted with the approval of the town board." As pointed out by the trial court, the ordinance fails to provide

any standards to guide the town board in admitting industries or trades in the future, and sec. II (b) constitutes an unlawful delegation of power to the members of the board:

"It is well settled that such power of zoning cannot be delegated to the town board as individuals who might then be permitted to admit or deny use of property for industry or trade at its whim or caprice. Both Mr. Boland, a member of the zoning committee, and Mr. Burdeau testified that it was the intention that various businesses from time to time would be permitted in the future if the board, in its opinion, believed it for the best interests of the town in general. The general rule is stated in volume 37 A. J. page 73, paragraph 158."

The rule referred to is also stated in 62 C. J. S., Municipal Corporations, p. 434, sec. 226 (6) b, as follows:

"A zoning ordinance or regulation should be clear and specific, and where such a regulation is vague and indefinite it may be held invalid. The regulation should prescribe a definite standard and furnish a uniform rule of action to govern the conduct of administrative officials; and the application of the regulation may not be left to the arbitrary will of governing authorities."

By the language of sec. II (b), the ordinance recognizes there are areas within the town suitable for other purposes than residences and shows that it was contemplated that trades and industries would be admitted in the future. Not only is the area where defendants' property is located not suited for residences, but the area along the railroad tracks is admitted by a member of the zoning committee to be proper for the development of industry, not residences. In plaintiff's brief it is stated:

"Admittedly there are places where a proper use would be business or industrial—perhaps in Oneida, or along the railroad tracks."

That being true, the failure of the ordinance to create districts other than residential, define their boundaries and establish standards for their regulation and use, violates the rules governing the making of classifications in the exercise of the police power, as stated in *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 222, 276 N. W. 311:

"(1) All classification must be based upon substantial distinctions which make one class really different from another.

"(2) The classification adopted must be germane to the purpose of the law.

"(3) The classification must not be based upon existing circumstances only.

"(4) To whatever class a law may apply, it must apply equally to each member thereof. . . .

" 'The true practical limitation of the legislative power to classify is that the classification shall be based upon some apparent natural reason,—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.' "

The purpose of zoning is to set aside areas for specific uses and to protect them from encroachments in the form of other uses inconsistent with the uses to which they are dedicated. *State ex rel. Tingley v. Gurda, supra.* In making the classifications necessary to facilitate that purpose, the municipality must recognize the natural reasons and differences suggested by necessity and circumstances existing in the area with which the ordinance deals.

Here we have a classification which completely ignores the apparent natural differences existing in the area of the town. The motive is clear and admitted: The town knew that the defendants planned to use their property as a salvage yard and zoned the entire town as residential with the sole object of preventing such use. Such an exercise of the zoning

power is unreasonable and arbitrary and beyond the purpose of the zoning law, especially in view of sec. 66.052, Stats.

We recognize that occasions might arise where it would be necessary to enact an emergency ordinance to accomplish the purposes of effective zoning,—where, for example, there are threats of industrial building in a residential area which might defeat a zoning plan. In *Miller v. Board of Public Works* (1925), 195 Cal. 477, 234 Pac. 381, 388, 38 A. L. R. 1479, the California supreme court pointed out that the preparation of a comprehensive zoning plan takes a great deal of time, and held that a temporary ordinance enacted for the purpose of barring construction which would frustrate the zoning plan then being developed by the city council was a valid exercise of the police power.

There is no point of similarity, however, between that case and the situation before us. The zoning plan there in contemplation was a comprehensive plan encompassing the entire city of Los Angeles; the district created as residential in advance of the general zoning ordinance was residential in character and a portion of the district which would ultimately be established as residential. The town of Hobart is largely open country, agricultural land. Nothing characterizes it as residential; in fact, the trial court found the particular area of defendants' property unfit for such use. There was no comprehensive zoning plan in preparation by the town board which would be defeated by the operations of the defendants. There was no threat of any business or industry coming in to make an emergency zoning ordinance necessary.

The decision in the *Miller Case, supra,* was based on the rule that it is primarily the province of the municipality to "draw the line of demarcation" in exercising its discretion with respect to the zoning function, and the courts will not interfere with that discretion in the absence of a clear showing that it has been abused. Our holding here, on a completely dissimilar set of facts, is that the town of Hobart

clearly abused its discretion in enacting the ordinance in question.

In speaking of the discretion to be exercised by the municipality in passing a zoning ordinance, this court said in *La Crosse v. Elbertson* (1931), 205 Wis. 207, 212, 237 N. W. 99,—

"Where different conclusions as to just where the lines of a district should be may be drawn from the evidence submitted, the conclusion adopted by the legislative body cannot be interfered with."

From the evidence in this case only one conclusion may be drawn. The boundaries of the town are not the proper boundaries for the creation of a residential district; this is admitted by the town itself. Under these circumstances, clearly it was an abuse of discretion to so establish them.

Plaintiff argues that if other portions of the ordinance are held invalid, under the provisions of the severability clause the section excluding junk and salvage yards may stand alone. Sec. V (d) of the ordinance expressly excludes the use of any premises "within the boundaries of the residential district" as junk or salvage yards. Since the ordinance is invalid with respect to classifying the entire town as residential, sec. V (d), even if held valid, is inoperative since there is no residential district to which the exclusion could apply.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). We do not construe the majority opinion as holding that a zoning ordinance which zones an entire town or municipality in a single-residence-use district is *per se* unconstitutional and void. However, we are fearful that it may be so construed in the future. An instance, in which an entire municipality was apparently validly zoned in a single-residence district, is afforded by the

case of *State ex rel. Saveland P. H. Corp. v. Wieland* (1955), 269 Wis. 262, 69 N. W. (2d) 217. As we interpret the majority opinion, a zoning ordinance which creates a single-use district is only unconstitutional if there are lands situated therein which are unfitted for any of the uses permitted under the ordinance.

The case of *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 276 N. W. 311, cited in the majority opinion, is not authority for the proposition that a zoning ordinance which zones a municipality in a single-use district is unconstitutional. The city ordinance before the court in that case was not a zoning ordinance but one regulating and licensing restaurants. Such ordinance provided that no license should be issued to operate a restaurant in connection with any other business unless the restaurant was separated from such other business with a solid partition wall without any openings in such wall. It further was *only to apply to restaurants commencing business after the effective date of the ordinance.* The relator Ford Hopkins Company, who wished to secure a license to operate a restaurant in connection with a drugstore, attacked the ordinance as discriminatory and violating the equal-protection-of-the-laws clause of the Fourteenth amendment. This court held the ordinance unconstitutional on such ground. The opinion does not even imply that, if the ordinance had classified all restaurants the same, it would have been void, but only that the classifications which were set up must be based upon substantial distinctions, and all members of each class must be treated equally.

The testimony in the instant case discloses that the town of Hobart is largely an agricultural area, but in recent years there has been a growing residential development in that portion of the town closest to the city of Green Bay. Sec. VI of its ordinance under attack contains the following nonconforming-use clause:

"The lawful use of land existing at the time of the adoption of this ordinance may be continued in the same use although such use does not conform to the provisions hereof, but if such nonconforming use is discontinued at any time for a period of one year thereafter, any future use of such premises shall be in conformity with the provisions of this ordinance."

Thus, under this nonconforming-use clause, all of the area of the town devoted to agricultural purposes at the time of the enactment can be continued to be used for such purpose. The effect, therefore, of the ordinance is to preserve the agricultural use of the greater portion of the town until such time as it gradually becomes converted into a residential area. If this is what the citizens of the town desire, we can see no legal impediment to them doing so by means of a zoning ordinance. There is nothing in our zoning statutes which makes it mandatory that provision be included for permitting industrial or commercial business in certain areas.

Unfortunately, the record is silent as to whether the lands purchased by the defendants Collier and Challe were devoted to agricultural purposes at the time of such purchase, or whether they were unused. However, assuming that they were unused so as to make inapplicable the nonconforming-use clause of sec. VI of the ordinance, let us examine the other material sections of the ordinance in the light of such circumstance.

Sec. I is entitled, "Boundaries," and establishes the boundaries of "the residential district," and such boundaries coincide with those of the town. Nothing is said in such section about permissible or prohibited uses of the land situated therein. Therefore, in so far as the defendants are concerned such section is innocuous.

Sec. II is entitled, "Use Regulations," and sub. (a) thereof provides that no buildings are to be erected in the residence district except dwelling houses and accessory buildings.

Sub. (b) thereof is quoted in the majority opinion and grants the power to the town board to grant approval to nonobjectionable and nonobnoxious industries.

Sec. IV is entitled, "Regulation of Size of Buildings," and the defendants do not complain that the requirements thereof place any undue burden upon them.

Sec. V is entitled, "Express Exclusion Clause," and excludes certain objectionable businesses which probably lie within the power of any municipality to exclude from its limits under sec. 66.052, Stats. In any event all could be excluded under the zoning power conferred by sec. 60.74. Sub. (d) of such sec. V of the ordinance expressly prohibits the use which defendants are attempting to make of their property, viz., a salvage yard for junked automobiles.

The remaining sections of the ordinance are not material to this appeal except sec. XII entitled, "Validity," reading as follows:

"If any section, subsection, sentence, clause, or phrase of this ordinance is for any reason held to be invalid such decision shall not affect the validity of the remaining portions of this ordinance. The town board hereby declares that it would have passed this ordinance and each section, subsection, sentence, clause, or phrase thereof irrespective of the fact that any one or more sections, sentences, clauses, or phrases be declared invalid."

We can perceive no reason whatever for this court not giving full effect to the above-quoted severability clause. If such severability clause is given effect, and viewing the facts most favorably from the standpoint of the defendants, the only section of the ordinance which is invalid as applied to defendants' lands is sec. II. If sec. II were to be eliminated entirely from the ordinance as being void as to defendants' lands, the valid restrictions contained in sec. V would prevent the defendants from using their lands for an automobile junk and salvage yard. The town is, therefore, entitled to

a judgment enjoining the defendants from making such use of their premises.

The majority opinion's conclusion, that the entire ordinance is void, is partly grounded on the wording of the preamble. This is because the preamble states the objective of providing several use districts while the ordinance zones the entire town as one district. However, this was not the case with respect to the original ordinance adopted February 5, 1952, prior to the amendment of April 15, 1952. As originally enacted there were in effect two use districts, a residence district comprising but a portion of the town, and the remainder of the town in which no use restrictions were imposed. Surely, the fact, that because the April 15, 1952, amendment did not also amend the preamble when it changed the boundaries of the residence district to include the entire town, should not be a factor to be considered in passing on the constitutionality of the ordinance. The subject of ordinance preambles was thoroughly treated in the majority and dissenting opinions in *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. (2d) 770. There is nothing in the rules there considered which would authorize invalidating the instant ordinance on the basis of the innocuous objective stated in the preamble.

The fact, that the motive of the town board in enacting the ordinance was to head off the objectionable use of defendants' property proposed to be made by them, is also immaterial. This was so held by the California supreme court in *Miller v. Board of Public Works* (1925), 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479 (appeal dismissed, 273 U. S. 781, 47 Sup. Ct. 460, 71 L. Ed. 889).

I am authorized to state that Mr. Justice FAIRCHILD joins in this dissenting opinion.