BUHLER and others, Respondents, v. RACINE COUNTY and another, Appellants.

*November 4—December 2, 1966.*

140

For the appellants there was a brief and oral argument by *Edward A. Krenzke,* corporation counsel.

For the respondents there was a brief by *La France, Thompson, Greenquist, Evans & Dye* and *William E. Dye* and *Adrian P. Schoone,* all of Racine, and oral argument by *Mr. William E. Dye* and *Mr. Schoone.*

A brief *amicus curiae* was filed by *Brach & Wheeler* of Racine.

HALLOWS, J.  The trial court held the Racine county zoning ordinance was valid and only in the retention of the Buhler land in the residential district by denying the past application of the plaintiffs for an amendment of the zoning ordinance did Racine county act arbitrarily, unreasonably and abuse its discretion. The trial court in its conclusions of law held the Buhler land had been for many years located in the center of a commercial

area which was necessary for the service of the surrounding residential area, that the retention of the Buhler land within the residential area deprived the plaintiffs of their property without due process of law and denied to them the equal protection of the law, and the defendant's county board acted arbitrarily, unreasonably and abused its discretion in refusing to rezone the plaintiffs' property.

The evidence does not sustain the conclusion the Buhler land had been for many years located in the center of a commercial area or that a commercial area is necessary in that location. Neither do we agree the evidence shows the county board acted arbitrarily or unreasonably in denying the plaintiffs' application.

No question on appeal is raised concerning the issue of due process. Incidental damage such as diminution of value of land because of a restricted use does not violate due process unless the restriction practically or substantially renders the land useless for all reasonable purposes. *Nick v. State Highway Comm.* (1961), 13 Wis. (2d) 511, 109 N. W. (2d) 71, 111 N. W. (2d) 95. If the limitation on use is in the nature of a taking in whole or in part for public purposes, then the constitution requires compensation to be paid, as otherwise there is a taking without compensation. See *State v. Herwig* (1962), 17 Wis. (2d) 442, 117 N. W. (2d) 335; *Kamrowski v. State* (1966), 31 Wis. (2d) 256, 142 N. W. (2d) 793. While respondents do not couch their attack on the failure of the county to rezone in terms of a denial of equal protection of the laws or of due process, they maintain such refusal was arbitrary and unreasonable. However, an attack based on the arbitrariness or unreasonableness of a legislative action is the equivalent of a claim of unconstitutionality based on a denial of equal protection of the laws or due process.

In respect to the question of the arbitrariness and unreasonableness of the refusal to rezone, the trial court

in its opinion accepted the testimony of several expert witnesses that the northeast corner of the Buhler land, at the intersection, should be zoned commercial because such was its highest and best use. The court reasoned if this corner were zoned commercial then the part of the Buhler land between it and the dairy would be undesirable for residential purposes, and if these two parts were zoned commercial the value of the remainder of the property would be largely destroyed for residential use. The court was thus of the opinion the placing of all the Buhler land in a residential area was discriminatory, arbitrary and unreasonable, and therefore void. However, the findings and the judgment do not refer to the original placing of the Buhler land in the residential district but to the retention of the property therein and the denial of the application for a change as being the arbitrary, unreasonable and void act.

We do not think it is a valid approach to the problem to accept testimony of the highest and best use of part of a parcel, and because of such acceptance extend the use to the rest of the parcel. This is the method used to change the nature of an area by spot zoning. The Buhler land was zoned residential in 1949. Since that time the only change of circumstances supporting a change to commercial use which has taken place is that County Trunk C has been widened and repaved and the traffic going through the intersection has increased to 13,000 vehicles a day. The nonconforming uses in the area naturally have not increased, but the building of residential dwellings has.

It may be true the Buhler land has more value and a greater potential for commercial than residential use. But this is partly caused by the fact the area has been zoned since 1949 for residential use. This newly acquired value of the land since adoption of the zoning ordinance does not weigh as heavily as a factor in judging the reasonableness of the ordinance as a diminution of value

occurring at the time of adoption. Besides, the difference in value for commercial use and for residential use is not sufficient, *per se*, to make the application of the zoning ordinance arbitrary or discriminatory. Almost every zoning ordinance which limits or affects the use of land affects its value. It is only when the deprivation of value directly caused by the zoning is so great that the landowner ought not to bear it that this element of value can be considered controlling or decisive. *State ex rel. American Oil Co. v. Bessent* (1965), 27 Wis. (2d) 537, 546, 135 N. W. (2d) 317; *Caledonia v. Racine Limestone Co.* (1954), 266 Wis. 475, 63 N. W. (2d) 697.

The general area in which the Buhler land is situated has not acquired a commercial character, nor does it constitute a natural commercial island in a larger residential area so as to make denial to change the zoning unreasonable. The existence of the grade school on the northwest corner of the intersection adds nothing to the plaintiffs' argument. In fact, grade schools are normally and naturally in residential areas, not in commercial districts. The three nonconforming uses—the dairy, filling station and animal hospital—do not serve as a very solid basis for now rezoning the Buhler land, nor do we think they establish the area as a commercial one. Nonconforming uses should not be the basis for redetermining the character of an area, otherwise the classification of an area would necessarily be determined by what was originally considered to be undesirable in the area. True, if sufficient uses existed to determine the original character of an area it might be unreasonable to zone the area in such a manner as to make such uses nonconforming. However, that is not the question presented on this appeal, although it seems to have been argued at the trial level.

We would consider it discriminatory if the three properties devoted to nonconforming uses were zoned commercial and the Buhler land left residential. That

obviously would be spot zoning. We would likewise consider zoning the Buhler land commercial and leaving the nonconforming uses unchanged to be spot zoning and undesirable, if not unjustified. The decision of the trial court has this effect. The basic question of whether this intersection should be zoned commercial or residential lies within the legislative discretion of the Racine county board, and the reasonableness of continuing to apply the ordinance to the Buhler land and in denying the application for a change is, at least on this record, a fairly debatable question which should not be resolved by the judicial process. *State ex rel. American Oil Co. v. Bessent, supra.*

We do not hold the trial court was without jurisdiction to hear this case. We have held, and other jurisdictions have generally held, courts have power to grant relief against zoning when it is unconstitutional, unreasonable or discriminatory. Courts can determine whether a zoning ordinance is a valid exercise of the police power, is within the limits of public necessity, and bears a substantial relationship to public purposes of health, safety or welfare. In some cases courts have reviewed zoning classifications to determine whether a classification of uses was fair and reasonable or arbitrary. *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. (2d) 770. In other cases, courts have inquired into the scheme of classification to see if it is applied fairly and impartially in a given case. *State ex rel. Humble Oil & Refining Co. v. Wahner* (1964), 25 Wis. (2d) 1, 130 N. W. (2d) 304; *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683; *Rowland v. Racine* (1937), 223 Wis. 488, 271 N. W. 36; *State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W. 317; 8A McQuillin, Mun. Corp. (3d ed., 1965 rev.), p. 263, sec. 25.277.

However, since zoning is a legislative function, judicial review is limited and judicial interference restricted to cases of abuse of discretion, excess of power, or error of law. Consequently, although a court may differ with

the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization. This rule applies not only to the necessity and extent of zoning but also to rezoning, classification, establishment of districts, boundaries, uses, and to the determination of whether or not there has been such a change of conditions as to warrant rezoning. *La Crosse v. Elbertson* (1931), 205 Wis. 207, 237 N. W. 99; *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 196 N. W. 451; 8A McQuillin, Mun. Corp. (3d ed., 1965 rev.), p. 276, sec. 25.279.

The trial court and the plaintiffs relied upon *Rowland v. Racine* (1937), 223 Wis. 488, 271 N. W. 36; *Hobart v. Collier* (1958), 3 Wis. (2d) 182, 87 N. W. (2d) 868; *State ex rel. Tingley v. Gurda, supra;* and *State ex rel. American Oil Co. v. Bessent, supra.* We do not consider the *Rowland Case* controlling, although it was used as a pattern for this action. In *Rowland,* the city council adopted a resolution to change the classification of the plaintiffs' property but then refused to implement its decision by an ordinance. In that case it was clear the land was improperly zoned residential while situated in the center of a natural light-manufacturing and retail-business area. No such clear showing is made here.

Likewise, in *Hobart* it was clear a whole town was zoned for residential purposes to prevent the plaintiff from operating a junkyard. Part of the town lying along a railroad track was especially adapted to commercial use. In *Tingley,* it was clearly shown that a piece of property in North Milwaukee was zoned for industrial purposes and was situated in an industrial area. After the annexation of North Milwaukee to the city of Milwaukee, this property and the block it comprised was rezoned residential, thus creating a small island for residential use in a locality whose uses were incompatible and repugnant to the use for residential purposes.

This does not mean that each individual parcel of land is entitled to be zoned and rezoned for its highest financial use. The use of an individual parcel must be related to the nature and character of the parcel, to the use of the surrounding land and to the overall scheme or zoning plan. Rezoning, likewise, should be based upon long-range planning and purposes for the whole community and not upon isolated considerations.

It is argued by the plaintiffs that the failure of the county board to rezone their property in 1961 was due to the protest of their neighbors, and for that reason they abandoned a similar attempt in 1964. We do not think the record shows convincingly the denials to rezone were based solely on the objection of Buhlers' neighbors. If the board refused to rezone solely upon the ground the neighbors objected to the rezoning and did not give proper consideration to the factors relating to the nature and character of the land and its use in relation to the surrounding area, we would consider such action on the part of the county board to be arbitrary and an abuse of its discretion. Property holders have a great interest in zoning, but as this court said in *Eggebeen v. Sonnenburg* (1941), 239 Wis. 213, 1 N. W. (2d) 84, they acquire no vested rights against rezoning because of their reliance upon the original zoning. Indeed, if this were not so no changes in zoning or in comprehensive zoning plans could ever be made to adapt land use realistically to changing times and environment.

The importance of neighbors' objections and protests to zoning amendments requested by a property owner has been legislatively recognized by the enactment of sec. 59.97 (3) (f), Stats.[1] This section provides generally

[1] "59.97 Zoning power. . . .

"(3) AMENDMENTS; CHANGES. . . .

"(f) . . . In case a protest against a proposed amendment is filed with the county clerk at least 24 hours prior to the date of the meeting of the county board at which the report of the zoning

that if 50 percent of the abutting property holders as defined therein object at least 24 hours prior to the hearing on the proposed change by the county board, then such ordinance amendment shall not be adopted except by the affirmative vote of three fourths of the members of the county board present and voting. We think this limitation exhausts the significance of the fact of neighbors' protests and renders such fact an improper ground upon which to determine action or nonaction in reference to zoning. However, the basis of the neighbors' protest is an entirely different matter, and the reason for their protests should be considered by the zoning board along with all other factors in determining zoning questions.

The record here shows only that over 50 percent of the neighbors objected, that the planning committee recommended denial of the petition, and that the Racine county board adopted the recommendation. There is no direct evidence the Racine county board rejected the plaintiffs' petition solely because of the neighbors' protests. It is true that defendant Henry Beyer testified he knew of no reason why the plaintiffs' property was not rezoned except for the opposition of neighbors. This is negative testimony, and his lack of knowledge of the reasons for

_____

agency is to be considered, duly signed and acknowledged by the owners of 50% or more of the area proposed to be altered, or by abutting owners of over 50% of the total perimeter of the area proposed to be altered included within 300 feet of the parcel or parcels proposed to be rezoned, action on such ordinance may be deferred until the zoning agency has had a reasonable opportunity to ascertain and report to the county board as to the authenticity of such ownership statements. Each signer shall state the amount of area or frontage owned by him and shall include a description of the lands owned by him. If such statements are found to be true, such ordinance shall not be adopted except by the affirmative vote of three-fourths of the members of the county board of supervisors present and voting. If such statements are found to be untrue to the extent that the required frontage or area ownership is not present such protest may be disregarded."

voting by the members of the county board does not prove the existence of the invalid reason.

The appellants' appendix contains only the judgment and the trial court's opinion. The plaintiffs-respondents have been required to print the pleadings and an abridgement of the testimony and have asked us to strike the appellants' brief for violation of sec. (Rule) 251.34 (5), Stats. We decline to do this in this case, but under sec. (Rule) 251.38 (2) we deny costs to the appellants and allow the plaintiffs-respondents to tax costs for printing the 36 pages of their appendix.

*By the Court.*—Judgment reversed; appellants denied costs and respondents allowed to tax as costs 36 pages of their appendix.

CURRIE, C. J. (*concurring*). I concur fully in the court's opinion written by Mr. Justice HALLOWS.

This concurring opinion has been prompted by the statement therein that neighboring property owners acquire no vested rights against rezoning because of their reliance upon the original zoning. While this is a correct statement of the law, the harm which would result to such neighboring property owners, who have purchased or improved their properties in reliance upon the existing zoned use, should always be considered by a municipal zoning authority confronted with a request for spot zoning.

Plaintiffs have attacked the county's action in refusing to rezone their property, which action was grounded on the wishes of neighboring property owners. This may well be a sound and valid basis for the refusal to rezone since protection of surrounding property values usually accords with promotion of the common good and general welfare of the community.[1] Spot zoning to be accomplished through rezoning should only be

[1] See 8 McQuillin, Mun. Corp. (3d ed., 1965 rev.), pp. 59 *et seq.*, sec. 25.25.

indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning, absent any showing that a refusal to rezone will in effect confiscate his property by depriving him of all beneficial use thereof.[2] Here the testimony discloses that plaintiffs' five-acre parcel has a value of at least $8,000 for residential purposes.

---

[2] On spot zoning generally, see 1 Rathkopf, The Law of Zoning and Planning, ch. 26.