HEANEY and others, Respondents, v. CITY OF OSHKOSH and another, Appellants: INDUSTRIAL TOWEL & UNIFORM, INC., Intervening Defendant.

*No. 248. Argued April 29, 1970.—Decided June 2, 1970.*
(Also reported in 177 N. W. 2d 74.)

304

For the appellants there was a brief and oral argument by *Vernon A. Swanson* of Oshkosh, assistant city attorney.

For the respondents there was a brief by *Williams & Lampe* and *Ronald L. Lampe,* all of Oshkosh, and oral argument by *Ronald L. Lampe.*

BEILFUSS, J.   The issue is: Did the ordinance amending the comprehensive zoning ordinance constitute illegal spot zoning and was it null and void as being arbitrary and unreasonable and in excess of the city council's legislative discretion?

Zoning authority is granted to municipalities by sec. 62.23 (7), Stats., which provides in part:

"ZONING.   (a) *Grant of power.*  For the purpose of promoting health, safety, morals or the general welfare of the community, the council may by ordinance regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes provided that there shall be no discrimination against temporary structures.  This subsection and any ordinance, resolution or regulation, heretofore or hereafter enacted or adopted pursuant thereto, shall be liberally construed in favor of the city and as minimum requirements adopted for the purposes stated. . . ."

The plaintiffs' burden in challenging the zoning ordinance has been set forth by this court in *Cushman v. Racine* (1968), 39 Wis. 2d 303, 306, 159 N. W. 2d 67, as follows:

"We must start with the premise that a zoning ordinance enacted pursuant to sec. 62.23 (7), Stats., is presumed to be valid and such ordinance must be liberally construed in favor of a municipality. Consequently, an alleged invalidity of the ordinance must be clearly shown by the party attacking it. *State ex rel. American Oil Co. v. Bessent* (1965), 27 Wis. 2d 537, 135 N. W. 2d 317; *State ex rel. Humble Oil & Refining Co. v. Wahner* (1964), 25 Wis. 2d 1, 130 N. W. 2d 304; *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. 2d 770."

In *Eggebeen v. Sonnenburg* (1941), 239 Wis. 213, 218, 1 N. W. 2d 84, it was held that zoning was a matter of legislative discretion and in the absence of a showing that the common council exceeded the bounds of its discretion its change is valid and must be affirmed.

It has also been observed that although a court may differ with the wisdom and desirability of a zoning change it cannot substitute its opinion for that of the zoning authority. *Buhler v. Racine County* (1966), 33 Wis. 2d 137, 147, 146 N. W. 2d 403.

The instant case involves the rezoning of a single parcel of land from the single-family residence classification accorded it and the surrounding area in the 1965 comprehensive zoning ordinance to a restricted industrial classification. The plaintiffs charged, and the lower court held, that this action constituted "spot zoning." A general definition of such a practice is stated as:

" 'Spot zoning' is the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity in the same use district." [2]

[2] 1 Rathkopf, *The Law of Zoning and Planning* (3d ed.), ch. 26–1, Spot Zoning.

The concept of "spot zoning" was discussed in dictum in a case involving an action to enjoin the construction of a railway depot adjacent to a first-class residential neighborhood, *Higbee v. Chicago, B. & Q. R. R.* (1940), 235 Wis. 91, 98, 99, 292 N. W. 320:

" 'Spot zoning' is such zoning as is condemned in *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 243 N. W. 317; *Geisenfeld v. Shorewood,* 232 Wis. 410, 287 N. W. 683; and *Rowland v. Racine,* 223 Wis. 488, 271 N. W. 36, wherein small areas in business or industrial districts were withdrawn from such districts and declared restricted to residences only. Doubtless an attempt to erect a manufacturing plant in a district zoned for and occupied by first-class single residences only might be properly held to be 'spot zoning' and unreasonable and arbitrary, but this can hardly be held to be so as to buildings of public utilities devoted to public service and promotive of the public welfare, especially under the express declaration of the instant original ordinance."

Even though it appears the attempted rezoning of the Lewis property constituted "spot zoning," such action is not per se illegal in Wisconsin. *State ex rel. Zupancic v. Schimenz* (1970), 46 Wis. 2d 22, 32, 174 N. W. 2d 533; *Cushman v. Racine, supra; Higbee v. Chicago, B. & Q. R. R., supra.* The standard to be applied in reviewing spot zoning was stated by Mr. Chief Justice CURRIE in his concurring opinion in *Buhler v. Racine County, supra,* pages 150, 151, and adopted as the rule in *Cushman v. Racine, supra,* page 309:

" '. . . Spot zoning to be accomplished through rezoning should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning, absent any showing that a refusal to rezone will in effect confiscate his property by depriving him of all beneficial use thereof.' "

Plaintiffs put considerable emphasis on their reliance on the 1965 comprehensive zoning ordinance as determinative of the public interest in this case. It was stated

in *Eggebeen v. Sonnenburg, supra,* and reaffirmed in *Buhler v. Racine County, supra,* that property holders do not acquire vested rights against rezoning, but only the right to continue in possession as a nonconforming user if their own property is rezoned. Notice should be extended, however, to the caution expressed by Mr. Chief Justice CURRIE respecting that premise in his concurring opinion in *Buhler,* page 150:

"While this is a correct statement of the law, the harm which would result to such neighboring property owners, who have purchased or improved their properties in reliance upon the existing zoned use, should always be considered by a municipal zoning authority confronted with a request for spot zoning."

A comprehensive zoning plan is generally defined in 8 McQuillin, *Municipal Corporations* (3d ed., 1965 rev.), pp. 211, 212, sec. 25.79:

"A comprehensive zoning plan is one which controls the use of land and buildings throughout the entire territory of the municipality by dividing the territory into use districts permanent in character according to present and probable future conditions. It directs so far as possible the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of individual property owners. It has been said that it is easier to determine what a comprehensive plan is not, than to define what it is; certainly, however, a comprehensive plan should embrace substantially all the area to be zoned, and should contemplate permanence, stability, and finality of design."

Amendments to comprehensive plans are discussed in 8 McQuillin, *supra,* pp. 173, 174, sec. 25.67a:

"Amendatory zoning ordinances, generally speaking, are subject to all requisites and limitations pertaining to the enactment of the original zoning ordinances. Thus, the amendment or repeal of zoning ordinances must be reasonable and not arbitrary nor discriminatory. Moreover, the amendment must conform to the comprehensive zoning plan."

Amendments altering comprehensive plans were discussed in *Buhler v. Racine County, supra,* and the court indicated, at page 148:

"This does not mean that each individual parcel of land is entitled to be zoned and rezoned for its highest financial use. The use of an individual parcel must be related to the nature and character of the parcel, to the use of the surrounding land and to the overall scheme or zoning plan. Rezoning, likewise, should be based upon long-range planning and purposes for the whole community and not upon isolated considerations."

The general public benefit or detriment of an amendment to such a comprehensive plan is discussed in 1 Anderson, *American Law of Zoning,* p. 248, sec. 5.06:

"A zoning amendment which reclassifies a small parcel to permit the owner to establish a particular use may be upheld where the proposed use appears to involve a public benefit which outweighs the special advantage to the private landowner. Many of the cases where decisive benefit to the community has been found involve uses such as public utility installations which have a unique relation to the public welfare. Others concern routine commercial uses for which there is a local need. In the latter instances, the public need for the use is weighed against the potential injury to the immediate neighborhood."

The defendant-city seeks to justify the amending ordinance on three general grounds: First, the general area surrounding the Lewis property did not develop for residential purposes as contemplated; second, land outside the city immediately west of the Lewis property was acquired by a foundry and rezoned to heavy industrial use; third, several physical changes occurred in the immediate area altering the character of development, namely, expansion of the Winnebago county airport, rerouting of State Highway 26 along West South Park Avenue, and the discovery of a rock ledge close to the surface tending to inhibit the installation of residential services such as

sewers. In addition, the city points to the existence of the stone quarry north of the Lewis property zoned industrial, but this was a factor present when the comprehensive plan was adopted.

On the first point the defendant-city elicited testimony to the effect that only four building permits had been issued since 1962 for the entire area here in question. The plaintiffs argue the only relevant time period is that period subsequent to the adoption of the comprehensive plan in 1965, and the two and one-half years between that ordinance and the attempted rezoning here does not provide a reasonably sufficient amount of time for development to have taken place. In addition, testimony of several landowners in the West South Park area indicated that plans to plat and subdivide about fifty acres were in process and held up only because of this litigation. The record further shows a school was in the planning stage for this area and that the city had recently expended $64,000 to reclaim 9.85 acres of former quarry property for development as city parks.

The testimony respecting the land located to the west of the Lewis property in the county indicated it had been owned by Universal Foundry for two years, and zoned heavy industrial, but had not been developed nor had any definite plans been made to construct a building. The president of the foundry company did indicate, however, that all future expansion plans would pertain to this parcel. However, because of the presence of underground gas mains pursuant to an easement, no industrial buildings can be constructed within several hundred feet of the Lewis property line.

Respecting the physical changes in the area, the city introduced testimony by landowners in the area and the city planner indicating Highway 26 had been rerouted onto West South Park Avenue following the expansion of the county airport to handle jet traffic. Both these factors appear subsequent to the 1965 plan and allegedly

altered the residential character of the area substantially. The testimony of defendants' own expert in city planning, Eugene Franchett, indicates the alteration of the route of Highway 26 had no substantial effect on the volume of traffic on West South Park Avenue. Other testimony indicated the airport had little or no effect upon the residential growth in the area.

Mr. Franchette was a resident planner assigned to Oshkosh by Harland-Bartholomew Associates to participate in the preparation of the comprehensive plan adopted in 1965. He testified that in the preparation of that part of the plan pertaining to the West South Park area he and his colleagues were not aware of the rock shelf later discovered close to the surface. The testimony of the director of public works for the city of Oshkosh, John Schneider, indicated a sanitary sewer was installed in 1962 on South Park Avenue from Knapp Street west to the city limits and rock formations were encountered nearly the entire length of the project. He also testified the cost of excavation for sewer construction is nearly 16 times greater when rock must be removed than when removing normal surface dirt. On cross-examination, however, Mr. Schneider agreed that utilities could be more easily installed if the property being developed were covered with fill.

Plaintiffs argue it is inconceivable the existence of the rock ledge was not discovered or considered until after the comprehensive ordinance was adopted in 1965. Supporting their contention is the presence of the stone quarries in the area, the problems encountered by the city sewer construction in 1962, as well as the residential construction that had already taken place in this area.

It appears the city plan commission recommended the classification of the Lewis property not be changed from R–1B to M–2, but the minutes of the commission as admitted at the trial, plaintiffs' Exhibit 4, are not present in the record before us. These minutes, as well as those

of several other meetings, were admitted into evidence and read at the trial but not transcribed by the reporter. Their contents are alluded to in the record but not contained therein.

In addition to the testimony of plaintiffs-landowners at the trial asserting the rezoning would have an adverse effect on their property values, the plaintiffs produced an expert, Robin Jones, who testified it would adversely affect the entire area. Mr. Jones was qualified as an expert appraiser and developer of residential areas and indicated the Lewis property could be developed into about 10 lots and marketed within eighteen months.

The trial court was of the opinion that the facts and issues of this case are very similar to those of *Cushman v. Racine, supra,* except that this proposal is even more detrimental to the surrounding residential area than was the proposed dental clinic in *Cushman.* The defendants have attempted to distinguish *Cushman* by demonstrating several changes in the locality since the adoption of the comprehensive ordinance. We believe the trial court was correct in concluding those alleged changes are not material or substantial enough to justify a spot zoning amendment to the code. We also agree that *Cushman* is authority for and controls the issues of this action.

We conclude the city council exceeded the bounds of its legislative discretion and that this ordinance amending the comprehensive zoning ordinance of 1965 is void because arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare of the community.

*By the Court.*—Judgment affirmed.