PRESCHER and others, Plaintiffs and Respondents, v. CITY OF WAUWATOSA and others, Defendants: CRAWFORD and others, Defendants and Appellants: HESS and others, Impleaded Defendants.

*March 2—April 11, 1967.*

424

For the appellants there were briefs by *Mount & Keck*, attorneys, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott*.

For the respondents there was a brief by *Godfrey, Trump & Davidson*, attorneys, and *Kneeland A. Godfrey* and *Thomas W. Godfrey* of counsel, all of Milwaukee, and oral argument by *Thomas W. Godfrey*.

WILKIE, J. Two issues are dispositive of this appeal:

1. Does a protest filed against an initial zoning ordinance, which protest and ordinance were placed on file when a second ordinance was introduced, apply against the second ordinance where the protesting party was given an opportunity to sign a new protest against the second ordinance but declined to do so?

2. Is the protest area contemplated by sec. 62.23 (7) (d), Stats., within or adjacent to the proposed rezoning rather than the entire tract so that the protest of the plaintiffs is not effective?

### *The Grede Protest.*

The protest signed and filed by Grede was effective as to the first ordinance. That protest was couched in broad terms against a change of zoning. But that protest is not effective as to the second ordinance. It is defective for the reason that Grede was given an opportunity to join in the protest as to the second ordinance and unequivocally refused to do so.

There may be instances where a categorically stated protest may be so plain that it may stand not only against an ordinance but also against a revision that contemplates no substantial change, and which is considered in such close proximity that it is clear that the protest as to the original ordinance should stand as to the revision. But this is not the instant situation.

The two ordinances contained differences substantial enough to warrant an entire legislative reprocessing of the second ordinance. Both changes from the original ordinance involved upgrading in the quality of the apartment buildings. Furthermore, the ordinances were not contiguous in time. The first ordinance was placed on file on March 1, 1966, and the second ordinance was not enacted until April 12, 1966. This gave the protesters six weeks to marshal their forces. Moreover, the protesters were on notice from the express statements of the city attorney that the council would not consider the Grede protest valid against the second ordinance unless Grede refiled his protest. After the March 1st meeting of the council, the proposed second ordinance went through the procedure requisite for enactment by the council. The ordinance was referred to the public welfare

committee and the city plan commission. Legal notice was made and a public hearing was held. All this involved a six-week time lag affording Grede a chance to file his protest anew.

The trial court's major consideration in determining that Grede's protest as to the first ordinance applied to the second ordinance was that the protest was couched in broad terms against changing the zoning of the proposed land to permit any apartment development. Essentially, this involved a determination by the trial court of what Grede's intention was as to the second ordinance by the language he used in the protest to the first ordinance. The facts of the instant case do not warrant such an assumption.

Grede was tendered an opportunity to protest and could have done so by the simple act of signing his name. The written protest tendered to Grede contained a precise statement of what the proposed second ordinance was designed to do, and he declined to sign it. Moreover, he took the trouble to return the unsigned protest to the soliciting attorney. This manifests a clear intention that Grede did not want to protest the second ordinance. By giving Grede's protest to the initial ordinance effect as to the second ordinance, the trial court has resurrected the first protest in spite of an intention on the part of Grede not to protest, although offered every opportunity to do so.

A protester should not be permitted to tie up an entire legislative process by filing a general protest at a given point in time. It is true that sec. 62.23 (7) (d), Stats., is designed to protect adjacent landowners from zoning changes, and the statutes have extended a great deal of protection to such persons. Nevertheless, the fact remains that a majority of the councilmen voted for the second ordinance. Protesters are permitted to block the wishes of a simple majority, but positive action should be required. The trial court contends that formal action is

required to withdraw a protest and cites several cases to this effect.[1] All these cases deal with filing a petition to initiate a referendum and require that a verified statement be submitted to remove a name from a petition. These cases are not similar to the case at bar because, in the case at bar, the ordinance to which the protest was directed was withdrawn, and an intention not to protest the new ordinance was manifested.

Thus, the trial court incorrectly ruled that the Grede protest was valid against the second ordinance. Grede's land was an integral part of the adjacent protester's requirement of 20 percent of the land adjacent to the proposed change. Without Grede's protest (assuming plaintiffs' protest is invalid) the protesters did not have the 20 percent of land required to force enactment by a three-fourths majority.

Thus, it becomes crucial whether or not the plaintiffs' protest was valid. Plaintiffs argue that their property borders on the whole zoning district, in which district the zoning of an area of land is being changed. They contend that the area of land around the entire district, rather than around the area located within the district which is directly affected by the rezoning, should be determinative for purposes of calculating the 20 percent protest. They conclude that under this reasoning their protest should be valid.

The plain language of the statute negatives the plaintiffs' contention. Sec. 62.23 (7) (d), Stats., provides for three categories of protesters sufficient to invoke the three-fourths majority.

". . . In case of a protest against such change, duly signed and acknowledged by the owners of 20% or more either of the areas of the land included in such proposed change, *or by the owners of 20% or more of the area*

---

[1] *Kelly v. State* (1938), 135 Fla. 346, 185 So. 157; *State ex rel. Westhues v. Sullivan* (1920), 283 Mo. 546, 224 S. W. 327; *Halgren v. Welling* (1936), 91 Utah 16, 63 Pac. (2d) 550.

*of the land immediately adjacent extending 100 feet therefrom, or by the owners of 20% or more of the land directly opposite thereto extending 100 feet from the street frontage of such opposite land,* such amendment shall not become effective except by the favorable vote of three-fourths of the members of the council." (Emphasis added.)

The reference of owners of land immediately adjacent is to the area of land "included in such proposed change." In other words, only landowners adjacent to the land where the proposed change is to be made are to be considered in determining whether the 20 percent requirement is met. The concept of protest advanced by plaintiffs is not sanctioned by the language of the statute.

Furthermore, from a policy standpoint, the protest statute should not embrace this district concept. The purpose of sec. 62.23 (7) (c), Stats., was to permit protest by landowners directly affected by zoning changes. Landowners whose property borders on land to be rezoned are directly affected because their land value and enjoyment of their property decreases. People on the periphery of areas to be rezoned are not so directly affected. Further, if the concept of "adjacent to the zoning district" were adopted, it would be harder to meet protest requirements because the area of land would be greater and the interest of the landowners in protesting would be less.

Protest statutes similar to sec. 62.23 (7) (d) of the Wisconsin statutes are common to several states and the district theory of plaintiffs has always been rejected. In *Hoelzer v. Incorporated Village of New Hyde Park*[2] a general change affecting the entire town was involved. The court stated that if the zoning change was specific, *i.e.,* affecting a particular area of land, then the eligibility for protest would apply only to landowners adjacent to land directly affected. Similarly, in *Parsons v. Wethers-*

[2] (1956), 4 Misc. (2d) 96, 150 N. Y. Supp. (2d) 765.

*field*,[3] the court construed the term "immediately adjacent" to mean directly abutting the land proposed to be rezoned. The trial court's conclusion that the plaintiffs were not eligible protesters is well warranted and the plaintiffs' protest is invalid.

Because of our determination herein that the Grede and Prescher protests are invalid, it is unnecessary to consider the question of whether or not dedicated or public lands should be included in calculating the total area within the 100-foot strip.

*By the Court.*—Judgment reversed.

HANSEN, J., took no part.

---

[3] (1948), 135 Conn. 24, 60 Atl. (2d) 771, 4 A. L. R. (2d) 330. See also *B. R. M. Realty Corp. v. Flynn* (1963), 39 Misc. (2d) 1049; 242 N. Y. Supp. (2d) 338, reversed on other grounds (1964), 20 App. Div. (2d) 798, 248 N. Y. Supp. (2d) 456; *Penny v. Durham* (1959), 249 N. C. 596, 107 S. E. (2d) 72.