RODGERS and wife, Appellants, v. VILLAGE OF MENOMONEE FALLS and another, Respondents.

*No. 231. Argued September 11, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 29.)

For the appellants there was a brief by *Niebler &
Niebler,* attorneys, and *Chester J. Niebler* of counsel, all
of Menomonee Falls and oral argument by *Chester J.
Niebler.*

For the respondents there was a brief by *Puls & Puls*
of Milwaukee, attorneys for the village of Menomonee
Falls; *Kraemer, Binzak & Sylvan* of Menomonee Falls,
attorneys for CAM Development Corporation; and *Foley*

& *Lardner* of Milwaukee, of counsel for CAM Development Corporation; and oral argument by *C. Morse Puls* for the village of Menomonee Falls; and *Daniel A. Kraemer* and *Gilbert W. Church* for CAM Development Corporation.

HANLEY, J.   There are three issues presented on this appeal:

(1) Should sec. 62.23 (7) (d), Stats., be construed so as to make the area of potential protest the area adjacent to and 100 feet from the boundary line of the property of the party seeking the zoning change, rather than the property for which rezoning is sought;

(2) Should the resolution passed by the school district at its annual meeting be treated as a valid protest to the petition for rezoning; and

(3) Was the rezoning of the 42-acre parcel illegal spot zoning?

*Statutory area of permissible protest.*

Appellants argue that the 100-foot boundary line prescribed by sec. 62.23 (7) (d), Stats., should be construed as extending 100 feet from the outermost limits of the land owned by the party seeking a zoning change, rather than from the land for which the zoning is sought. Realizing the need for extra diligence in the amending of zoning regulations, the legislature has set forth in sec. 62.23 (7) (d), Stats., a procedure whereby certain specified landowners may protest the enactment of zoning changes. In part it provides:

". . . In case of a protest against such change, duly signed and acknowledged by the owners of 20% or more either of the areas of the land included in such proposed change, or by the owners of 20% or more of the area of the land immediately adjacent extending 100 feet

therefrom, or by the owners of 20% or more of the land directly opposite thereto extending 100 feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of three-fourths of the members of the council. . . ."

The above provision was construed in the case of *Prescher v. Wauwatosa* (1967), 34 Wis. 2d 421, 149 N. W. 2d 541, where this court held that only landowners adjacent to the land where the proposed change is to be made, and not those adjacent to the borders of a whole zoning district in which a specific area is being rezoned, are to be considered as valid protesters under the statute. The court set forth the policy considerations which precluded the statute from embracing the "district concept" there argued for:

". . . The purpose of sec. 62.23 (7) [d], Stats., was to permit protest *by landowners directly affected by zoning changes.* Landowners whose property borders on land to be rezoned are directly affected because their land value and enjoyment of their property decreases. People on the periphery of areas to be rezoned are not so directly affected. . . ." *Prescher v. Wauwatosa, supra,* at page 431. (Emphasis supplied.)

Here, CAM had on the south and west left a strip 150-foot wide zoned completely consistent with the areas bordering it, namely, single family residential housing.

Protest statutes similar to sec. 62.23 (7) (d) of the Wisconsin statutes are common to several states and the "district concept" has always been rejected. In North Carolina the "district concept" was rejected in the following cases: *Penny v. Durham* (1959), 249 N. C. 596, 107 S. E. 2d 72; *Armstrong v. McInnis* (1965), 264 N. C. 616, 142 S. E. 2d 670; and *Heaton v. Charlotte* (1971), 277 N. C. 506, 178 S. E. 2d 352. In each case the developer sought rezoning of a large tract of land from single family residential to commercial and/or multi-

family residential. In each case the developer insulated his request for change by leaving a "buffer area" of from 100 to 150 feet between the area to be rezoned and the surrounding community. In each case the North Carolina court in construing their statute rejected the protesters' contentions. The court in *Heaton v. Charlotte, supra,* at page 527, quoted from 1 Rathkopf, *The Law of Zoning and Planning* (3d ed. 1969), ch. 28, sec. 28–[11], where it stated that:

" '. . . [W]here an applicant for a zoning change seeks to avoid the necessity of a larger than majority vote by creating a buffer zone of 100 feet between that portion of his property sought to be rezoned and the lands of adjacent property owners, such action is valid and avoids the requirement of such larger vote.' "

The use of "buffer zones" has also been sustained by the New York courts. In *Miner v. Yonkers* (1959), 19 Misc. 2d 321, 189 N. Y. Supp. 2d 762, affirmed, 9 App. Div. 2d 907, 195 N. Y. Supp. 2d 242, a 200-foot space was left between an area rezoned for department store purposes, and the remainder of the district was devoted to multifamily residential uses.

The trial court's conclusion that the 150-foot strip on the west and south sides of the tract, which remained zoned RS–2, does legally eliminate the right of property owners adjacent to the outside boundaries of the whole property from being legal protesters under sec. 62.23 (7) (d), Stats., is correct.

*Annual district meeting resolution.*

The appellants contend that the resolution passed at the district school meeting on July 29, 1969, some fourteen months prior to the date of the adoption of the ordinance, was sufficient to block any rezoning in the

future by anything less than a three-quarters or six-to-one vote by the village board.

Appellants' contentions on this point have again already been considered and rejected by this court in *Prescher v. Wauwatosa, supra*. In that case, one Grede filed a protest to a proposed rezoning. A few days later, the proposed rezoning was modified slightly and resubmitted. Grede then did not file a protest although he was given an opportunity to do so. The trial court held that, because the two proposed rezonings were so similar, the objection to the first one should stand as an objection to the second. This court reversed, noting at page 429:

· "Grede was tendered an opportunity to protest and could have done so by the simple act of signing his name. The written protest tendered to Grede contained a precise statement of what the proposed second ordinance was designed to do, and he declined to sign it. . . .

"A protester should not be permitted to tie up an entire legislative process by filing a general protest at a given point in time. It is true that sec. 62.23 (7) (d), Stats., is designed to protect adjacent landowners from zoning changes, and the statutes have extended a great deal of protection to such persons. Nevertheless, the fact remains that a majority of the councilmen voted for the second ordinance. Protesters are permitted to block the wishes of a simple majority, but positive action should be required. . . ."

The school district here was given notice of its opportunity to file a protest too. But it did not file a protest. The only reasonable presumption is that in November of 1970, the Joint School District No. 1 did not wish to file a protest, regardless of its intent back in July of 1969.

We are satisfied that the resolution of the school district does not comply with the statutory requirements. Sec. 62.23 (7) (d), Stats., requires that the protest be "duly signed and acknowledged by the owners." The resolution was unsigned and unacknowledged.

The trial court was correct in excluding the school district area from the 20 percent of the land directly opposite the subject property extending 100 feet from the street.

*Question of spot zoning.*

The appellants next argue that the rezoning of the 42-acre tract constituted illegal spot zoning; and they request the court to hold the ordinance null and void as being arbitrary and unreasonable and in excess of the legislative discretion of the village board. Appellants face the burden of a heavy presumption against their claim.

"We must start with the premise that a zoning ordinance enacted pursuant to sec. 62.23 (7), Stats., is presumed to be valid and such ordinance must be liberally construed in favor of a municipality. Consequently, an alleged invalidity of the ordinance must be clearly shown by the party attacking it. . . ." *Cushman v. Racine* (1968), 39 Wis. 2d 303, 306, 159 N. W. 2d 67; *Heaney v. Oshkosh* (1970), 47 Wis. 2d 303, 307, 177 N. W. 2d 74.

It has likewise been stated by the court that although it may differ with the wisdom of a zoning change, it is the opinion of the zoning authority which controls in the absence of abuse of discretion, excess of power, or error of law. *Buhler v. Racine County* (1966), 33 Wis. 2d 137, 147, 146 N. W. 2d 403.

The court in the case of *State ex rel. Zupancic v. Schimenz* (1970), 46 Wis. 2d 22, 32, 33, 174 N. W. 2d 533, stated:

". . . [S]pot zoning is usually understood to be zoning 'by which a small area situated in a larger zone is purportedly devoted to a use inconsistent with the use to which the larger area is restricted.' *Higbee v. Chicago, B. & Q. R. R.* (1940), 235 Wis. 91, 292 N. W. 320. . . ."

Although such a small area of use which is inconsistent with the use of the larger surrounding area may be spot zoning, it is likewise clear that all spot zoning is not per se illegal in Wisconsin. *Heaney v. Oshkosh, supra,* at page 308. In *Buhler v. Racine County, supra,* at pages 150 and 151, the then Mr. Chief Justice CURRIE set forth in his concurring opinion the standard which the court should follow in determining whether a municipality's action will amount to illegal spot zoning:

". . . Spot zoning to be accomplished through rezoning should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning, absent any showing that a refusal to rezone will in effect confiscate his property by depriving him of all beneficial use thereof. . . ."

This approach has been followed whenever the court is confronted with an allegation that illegal spot zoning has taken place. *Cushman v. Racine, supra,* at page 309; and *Heaney v. Oshkosh, supra,* at page 308.

The size of the tract rezoned in the case at bar indicates that "spot" zoning is not involved, as noted in 1 Anderson, *American Law of Zoning* (1968), p. 252, sec. 5.07, a leading treatise on the subject:

"If any single attribute of an amendment can fairly be regarded as more significant than all others in determining the presence of spot zoning, it is the size of the area reclassified. The classic definitions refer to spot zoning as an amendment which affects a 'small parcel of land,' and the bulk of cases in which amendments have been disapproved as spot zoning involve reclassifications of relatively small parcels. It is neither surprising nor irrational that the size of the area reclassified should have figured prominently in the cases where the challenge to the amendment was based upon a charge of spot zoning. It is inherently difficult to relate a reclassification of a single lot to the comprehensive plan; it is less troublesome to demonstrate that a change which affects

a larger area is in accordance with a plan to control development for the benefit of all."

No authority can be found where rezoning of a tract as large as the 42-acre tract involved here was called "spot" zoning. In *Cushman v. Racine, supra,* the property in question was 74 feet by 125 feet; in *Heaney v. Oshkosh, supra,* the property was 4.5 acres.

We are of the further opinion that this ordinance does not involve "spot" zoning because the recommendations of the village board and plan commission were based upon long-range planning and considerations which affect the whole community. This is evidenced by the fact that CAM's request for rezoning was included within the master zoning ordinance for the entire community, which was the subject of numerous studies.

We conclude that the rezoning was legal and in accordance with the law and statutory requirements and was a reasonable exercise of the legislative power of the village of Menomonee Falls.

*By the Court.*—Judgment affirmed.