STEP NOW CITIZENS GROUP, Gregory & Kristin Armstrong, Robert Bruss, Gary Eake, John & Lucia Franzen, Edwin Gallatin, Jr. & Debra Gallatin, Gambrinus Enterprises d/b/a Utica Golf Course, Mark Haslanger, Carrol & Elaine Josephson, Jane Josephson, Mike & Sandy Miller, Scot Nerenhausen, Richard Oelschlager, Arthur & Alison Pontynen, Fred & Susan Rosenmeier, Sandra Schaetz, Doug & Sheila Schoenfeldt, Joy Smith, Kurt & Cindy Sorenson, Jeff White, Ronald & Donna Wiles, Mike Willeford & David Willeford, Plaintiffs-Respondents-Cross-Appellants,

v.

TOWN OF UTICA PLANNING & ZONING COMMITTEE, Town Board of the Town of Utica, Town of Utica Town Clerk, Winnebago County and Winnebago County Board of Supervisors, Defendants-Co-Appellants-Cross-Respondents,

Robert POTRATZ, Marilyn Potratz and Algoma Ethanol, LLC, Defendants-Appellants-Cross-Respondents.

Court of Appeals

*No. 02–2760. Oral argument February 26, 2003.—Decided April 16, 2003.*

2003 WI App 109

(Also reported in 663 N.W.2d 833.)

667

On behalf of the defendants-appellants-cross-respondents Robert Potratz and Marilyn Potratz, the cause was submitted on the briefs of *Richard J. Carlson* of *Silton, Seifert, Carlson, Gamble & Schubert, S.C.*, Appleton. On behalf of the defendant-appellant-cross-respondent Algoma Ethanol, LLC and joined by defendants-co-appellants-cross-respondents Winnebago County and Winnebago County Board of Supervisors, the cause was submitted on the briefs of *Eric M.*

*McLeod* and *Edward J. Pardon* of *Michael, Best & Friedrich, LLP*, Madison. On behalf of the Potratzes and Algoma Ethanol, LLC, there was oral argument by *Richard J. Carlson*.

On behalf of the defendants-co-appellants-cross-respondents Town of Utica Planning & Zoning Committee, Town Board of the Town of Utica, and Town of Utica Town Clerk, the cause was submitted on the briefs of *Raymond J. Pollen* and *Ryan G. Braithwaite* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee. There was oral argument by *Ryan G. Braithwaite*.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Edward R. Garvey, Glenn M. Stoddard* and *Diane L. Milligan* of *Garvey & Stoddard, S.C.*, Madison. There was oral argument by *Glenn M. Stoddard*.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. The Town of Utica Planning & Zoning Committee, the Town Board of the Town of Utica, the Town of Utica Town Clerk (collectively, the Town), Winnebago County and the Winnebago County Board of Supervisors (collectively, the County), Robert and Marilyn Potratz (the Potratzes) and Algoma Ethanol, LLC (Algoma) all appeal a judgment of the circuit court that reversed the County's vote to amend a zoning ordinance adopted by the Town, concluding that the rezoning constituted illegal spot zoning. The ordinance amended the zoning of the Potratzes' property from Agricultural to Industrial to allow construction and operation of an ethanol plant on the property. The Potratzes, the Town, the County and Algoma argue that the Town's and the County's decisions do not constitute illegal spot zoning. We agree and reverse this portion of

the judgment of the circuit court and reinstate the Town's and County's decisions.

¶ 2. Step Now Citizens Group (Step Now) is an unincorporated association comprised of adult citizens of Wisconsin who reside and/or own real estate in the Town of Utica and/or Winnebago county who are potentially affected by land use, zoning and land development decisions of the Town and the County. Step Now cross-appeals, arguing that the rezoning of the Potratz property is null and void because the Town failed to follow necessary notice requirements, failed to comply with Wis. Stat. § 91.77 (2001–02)[1] and issued the building permit in error. We disagree and affirm that portion of the judgment.

## FACTS

¶ 3. Algoma proposes to build a $36 million plant for the production of ethanol on the north twenty-four acres of the northwest quarter of the northeast quarter of section 1 in the Town of Utica. The parcel, located adjacent to State Trunk Highway 91 in a predominantly rural area devoted to agricultural use, is owned by the Potratzes. On October 15, 2001, the Potratzes petitioned the Town to change the zoning classification of the property from Agricultural District to Industrial District for use as an ethanol plant. The petition was referred to the Town of Utica Planning & Zoning Committee (PZC) for study, hearing and recommendation to the Town Board.

¶ 4. The Town held three public informational meetings. The Town provided a venue for these three meetings which were held on October 24, November 1

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

and November 15, 2001. An Algoma representative presented information at these meetings to educate the public with experts on groundwater, plant design, traffic, engineering and site design, rail service and economics.

¶ 5. One Town Board member and two PZC members flew to visit an operating ethanol plant in Minnesota sometime in October 2001. Sometime in October 2001, Robert Potratz contacted the Town Chairman to see if any town officials wanted to visit an operating ethanol plant. A public relations person for Algoma accompanied the Potratzes, a Town Board member and two PZC members on the visit. On the return plane ride from the plant, the Town Board member stated that the passengers reviewed literature about ethanol manufacturing.

¶ 6. The PZC was initially scheduled to hold a public hearing on the request for rezoning on December 6, 2001, but the meeting was adjourned. The PZC hearing was rescheduled for January 3, 2002. On January 3, 2002, the PZC held a public hearing on the Potratz petition. After nearly three hours of hearing public testimony, the PZC considered and discussed the following issues: site plan, odor emissions, noise and traffic considerations, employment and tax base consequences, fire control considerations, water considerations, and the effects on future objectives of Town planning.

¶ 7. The PZC concluded that the site visit to Minnesota established that odors would be slight and limited in geographic scope and that noise would be modest inside the plant and minimal outside the plant. The PZC further concluded that traffic counts established that there was room for additional traffic on State Trunk Highways 44 and 91 to accommodate

periodic traffic to and from the plant. The PZC noted that the proposed plant is a decentralized agricultural industry located in an agricultural area. The PZC made tax base comparisons between the number and type of residences needed to provide equivalent taxes.

¶ 8. The Town Land Use Plan (the Plan) was also discussed. A PZC member believed that the Plan was a "social contract" with the residents of the Town of Utica and that the area in question is shown as agricultural and not industrial; another PZC member believed that the Plan was only a proposed plan when it was adopted and that changes had been made since it had been adopted. At the public hearing, a member of the PZC introduced an addendum that the Potratzes had requested be part of the rezoning application. This addendum contemplated a zoning change back to Agricultural if Algoma failed to build on the property in question.

¶ 9. The PZC voted to recommend to the Town Board to approve the Potratz petition to rezone the property to Industrial, provided that the property revert back to Agricultural if federal and state agency approvals and permits and favorable groundwater test results were not obtained within eighteen months.

¶ 10. The Amendatory Ordinance drafted on behalf of the Town after the January 3, 2002 PZC hearing and before the January 14, 2002 Town Board meeting specifically identifies Robert Potratz as the owner of the land being rezoned and identifies an ethanol manufacturing plant as the proposed use. The Ordinance also states:

WHEREAS, while the property described herein is suitable and appropriate for an ethanol manufacturing plant, the property may not be appropriate generally

673

for other uses that are permitted or permissible in the Industrial District in the event that required approvals, permits and favorable test results are not obtained in connection with the plant and the property[.]

The draft ordinance contains the recommended addendum, that the property revert back to Agricultural if the required federal and state agency approvals, permits and favorable test results are not obtained within eighteen months.

¶ 11. On January 14, 2002, the Town Board voted 2–1 to adopt the ordinance rezoning the property from Agricultural to Industrial. Again, the Plan was discussed. The Town Supervisor again argued that if the Town Board approved a rezone for a use inconsistent with the Plan, the Town Board would be jeopardizing the integrity of the Plan as a foundation for future land use decisions.

¶ 12. The Town Board found, among other things, that the ethanol plant is complementary to farming and the existing agricultural economy of the Town of Utica and that the proposed site of the ethanol plant would enable safe and convenient access for the delivery of agricultural commodities to the plant and the transportation of products from the plant.

¶ 13. The Town Board also found that while the property is suitable and appropriate for use as an ethanol plant, the property may not be appropriate generally for other uses that are permitted in an Industrial District in the event that required federal and state approvals, permits and favorable groundwater test results are not obtained. Consequently, the Amendatory Ordinance provides that the property will revert back to Agricultural District in the event the approvals, permits and favorable test results are not

674

obtained within eighteen months. In essence, the Town Board incorporated the recommendations of the PZC.

¶ 14. Winnebago County has a county zoning ordinance. Pursuant to Wis. Stat. § 60.62(3), no town zoning ordinance or amendment of a zoning ordinance may be adopted unless approved by the County Board in counties having a county zoning ordinance.

¶ 15. The Town submitted the Amendatory Ordinance, a map of the Potratz property and a scale map of the surrounding area, including zoning classifications, to Winnebago County for its review. On March 14, 2002, the Town Clerk wrote the Winnebago County Zoning Administrator a letter stating that the Town Board had not formally adopted the Town Land Use Plan. The Town did not include the proposed land use map from the Plan or any excerpts from the Plan in its application for County approval of the rezoning. In the Town's request for County approval of the rezoning, it acknowledged that the findings related to land use planning had not been found.

¶ 16. The County subsequently requested Town Board minutes for the Potratz rezoning hearing, the PZC minutes for the Potratz rezoning and a letter from the Town Clerk certifying that the Town Board had not adopted the "Town of Utica Comprehensive Plan." The letter referenced a prior phone conversation where the Town Clerk apparently told the County Zoning Administrator that the Town Board had not yet adopted the Plan because some changes were to be made and a hearing was to be held. The Town Clerk confirmed her belief about the status of the Plan in a response letter to the County Zoning Administrator.

¶ 17. On March 19, 2002, the Winnebago County Board voted to approve the Potratz rezoning. On April 9, 2002, Step Now filed a complaint in the circuit court

675

seeking a declaratory judgment under WIS. STAT. § 806.04(2) that the Potratz rezoning constituted illegal spot zoning; the complaint also filed public and private nuisances actions. A July 12, 2002 amended complaint added a common law certiorari action.

¶ 18. On July 26, 2002, the Potratzes and Algoma moved the circuit court for summary judgment on all Step Now claims. The County joined in this motion as did the Town. The Town also moved to quash the writ of certiorari.

¶ 19. Step Now filed a cross-motion for summary judgment on September 24, 2002. A hearing was held on these motions on September 30, 2002. In an oral decision, the circuit court held that the Potratz rezoning was unreasonable and unconstitutional because the area rezoned was too small; the creation of jobs and opportunities for citizens afforded by the plant too little; the distance from a designated industrial area in the Plan too great; and the distance from a private golf course and several residences too little. The circuit court also expressed concern that the County had not been given accurate information that the Town had adopted a land use plan and that it was reasonable to speculate that the County decision may have been different.

¶ 20. The circuit court granted Step Now's motion for summary judgment on its claim that the rezoning was unconstitutional spot zoning. The circuit court granted the Potratz/Algoma/Town of Utica/Winnebago County motion for summary judgment, dismissing the Step Now claim of invalidity based upon purported procedural irregularities and the Step Now claim of nuisance.

¶ 21. Judgment was entered on October 14, 2002. On October 16, 2002, the Potratzes and Algoma filed a

notice of appeal; Algoma moved the circuit court for a stay of the judgment. On October 22, 2002, the circuit court held a hearing on the motion for a stay, which it denied. Subsequently, the Town and the County filed a notice of appeal. Step Now cross-appeals.

## DISCUSSION

¶ 22. The Potratzes, the Town, the County and Algoma have all filed appeals in this matter while Step Now has filed a cross-appeal. Each will be addressed in turn.

### *Appeal*

¶ 23. The Potratzes, the Town and Algoma all argue that the Potratz rezoning from Agricultural to Industrial does not constitute illegal spot zoning. We agree.

¶ 24. The circuit court disposed of this issue on summary judgment. We review the grant or denial of a summary judgment de novo and we apply the same standard as does the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). In evaluating whether a defendant is entitled to summary judgment, we examine the defendant's submissions to determine whether they establish a prima facie defense to the claim; if they do, we then determine whether the plaintiff's submissions in response create a genuine issue of material fact that defeats the motion for summary judgment and entitles the plaintiff to a trial. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983).

677

¶ 25. Zoning power is granted to municipalities by Wis. Stat. § 62.23(7). *Cushman v. City of Racine*, 39 Wis. 2d 303, 306, 159 N.W.2d 67 (1968). Pursuant to this grant of police power, a municipality, for the purpose of promoting health, safety, morals or the general welfare of the community, may regulate and restrict buildings in height and size, the percentage of the lot which they may occupy, the size of yards, open spaces, density of population and the location and use of buildings and land for trade, industry, residences or other purposes. *Id.* Amendment of zoning ordinances is also permitted. *Id.*

¶ 26. Step Now faces the burden of a heavy presumption against its challenge to the rezoning. *See Rodgers v. Vill. of Menomonee Falls*, 55 Wis. 2d 563, 572, 201 N.W.2d 29 (1972). Zoning is a matter of legislative discretion, *Heaney v. City of Oshkosh*, 47 Wis. 2d 303, 307, 177 N.W.2d 74 (1970), and we must start with the premise that a zoning ordinance enacted pursuant to Wis. Stat. § 62.23(7) is presumed valid and must be liberally construed in favor of the municipality. *Cushman*, 39 Wis. 2d at 306. Consequently, an alleged invalidity of the ordinance must be clearly shown by the party attacking it. *Rodgers*, 55 Wis. 2d at 572. While a court may differ with the wisdom and desirability of a zoning change, it cannot substitute its opinion for that of the zoning authority. *Heaney*, 47 Wis. 2d at 307. The opinion of the zoning authority controls in the absence of abuse of discretion, excess of power or error of law. *Rodgers*, 55 Wis. 2d at 572.

¶ 27. Because the case at bar does not involve the initial shaping of zoning districts for land use but '

involves one parcel singled out for different treatment from that originally accorded the neighboring property, it thus falls into the category of spot zoning. *See Cushman*, 39 Wis. 2d at 306. Spot zoning is defined as "the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity in the same use district." *Id.* at 306–07 (citation omitted).

¶ 28. Spot zoning is not *per se* illegal. *Rodgers*, 55 Wis. 2d at 573. This is true because spot zoning is not necessarily inconsistent with the purposes for which zoning ordinances can be passed according to Wis. Stat. § 62.23(7). *Cushman*, 39 Wis. 2d at 307. Spot zoning has been characterized both as a necessary device to provide flexibility to comprehensive zoning ordinances and as "the very antithesis of planned zoning." *Howard v. Vill. of Elm Grove*, 80 Wis. 2d 33, 41–42, 257 N.W.2d 850 (1977) (citation omitted).

¶ 29. The Potratzes and the Town first argue that the size of the parcel being rezoned determines whether it is spot zoning; because the parcel in question here is twenty-four acres, they argue, the rezoned parcel is too large to be considered spot zoning. However, we agree with Step Now that the size of the parcel is not dispositive in determining whether a rezoning constitutes spot zoning. While size is significant, *see Rodgers*, 55 Wis. 2d at 573–74, it is but one factor to consider. Because the Potratz parcel was "granted privileges which [were] not granted or extended to other land in the vicinity in the same use district," this is spot zoning. *See Cushman*, 39 Wis. 2d at 306–07.

¶ 30. But again, spot zoning is not *per se* illegal in Wisconsin. *Heaney*, 47 Wis. 2d at 308. In determining the validity of a zoning ordinance, we recognize that each case must be determined on the facts. *Ballenger v. Door County*, 131 Wis. 2d 422, 428, 388 N.W.2d 624 (Ct. App. 1986). The factors to be weighed in considering the validity and reasonableness of rezoning are several. *See Heaney*, 47 Wis. 2d at 310. The pertinent inquiries go to whether the rezoning is consistent with long-range planning and based upon considerations which affect the whole community. *Id.* The nature and character of the parcel, the use of the surrounding land and the overall scheme or zoning plan are also relevant. *Id.*; *see also Ballenger*, 131 Wis. 2d at 427. Finally, the interests of public health, morals and safety must also be considered, as well as the promotion of public welfare, convenience and general prosperity. *State ex rel. Am. Oil Co. v. Bessent*, 27 Wis. 2d 537, 544, 135 N.W.2d 317 (1965); *see also Ballenger*, 131 Wis. 2d at 427.

¶ 31. The concept of public welfare is broad and inclusive and embraces in comprehensive zoning the orderliness of community growth, land value and aesthetic objectives. *Am. Oil Co.*, 27 Wis. 2d at 545. The standard which we must follow in determining whether a municipality's action amounts to illegal spot zoning is as follows:

> Spot zoning to be accomplished through rezoning should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning, absent any showing that a refusal to rezone will in effect confiscate his property by depriving him of all beneficial use thereof. . . .

680

*Rodgers*, 55 Wis. 2d at 573 (citation omitted). This approach has been followed whenever the court is confronted with an allegation that illegal spot zoning has taken place. *Id.*

¶ 32. Again, our interference is limited to cases involving abuse of discretion, excess of power or error of law. *Cushman*, 39 Wis. 2d at 307. We agree with the circuit court that there was no error of law here. Our interference is justified, then, only if there is an abuse of discretion or the municipality acted in excess of power.

¶ 33. At the January 3, 2002 PZC hearing, a letter was read from a citizen indicating that the ethanol plant would decrease reliance on imported oil, increase demand for local farmers' corn, broaden the Town's tax base and create jobs through construction and operation of the plant. The PZC considered the site plan, odor emissions, noise and traffic considerations, employment and tax base consequences, fire control considerations, water considerations and the general effects of zoning gradation for future objectives of Town planning. The PZC concluded that the site visit determined that odors were slight and limited in geographic scope and that noise inside the plant was modest and outside the plant was minimal. The PZC further concluded that a traffic count indicated there was room for additional traffic on Highways 44 and 91. In addition, the PZC concluded that the proposed plant was a decentralized agricultural industry in an agricultural area.

¶ 34. At the January 14, 2002 Town Board hearing, numerous people spoke out in favor of and against the ethanol plant. A representative from the Wisconsin Department of Agriculture spoke about the benefits of an ethanol plant to the agricultural community and

presented a letter from the Secretary of the Department of Agriculture regarding the economic benefits to the community and the area and the need for ethanol infrastructure. During deliberations, the Town Board noted that the PZC had approved the zoning change and acknowledged that farmers would receive a higher income for their grain if the plant was built. The Town, through the PZC, found that the nature of an ethanol plant is not strictly industrial and found that the plant was a decentralized agricultural industrial use and thus consistent with the agricultural area.

¶ 35. At the March 19, 2002 County Board hearing, the following information was presented: the plant would occupy approximately twenty-four acres and be located on State Highway 91. A school is approximately 2.35 miles away and the YMCA is approximately two miles away. The areas surrounding the proposed site are zoned for commercial or industrial use. Odor from the plant would be minimal because there will not be a dryer for the wet cake. A high capacity production well and two water level observation wells were already installed; the latter will measure the draw from the groundwater by the high capacity production well. The plant would use an aquifer beneath the aquifer used by most residential wells in the area and thus should not cause enough water draw down to expose the arsenic zone to oxygen. The development of a pumping program (i.e., multiple wells) could manage the maximum draw down in the lower aquifer, which is where the high capacity production well is located.

¶ 36. Again, zoning is a matter of legislative discretion, *Heaney*, 47 Wis. 2d at 307. The term "discretion" contemplates an exercise of judgment based on

three factors: (1) the facts of record, (2) logic, and (3) the application of proper legal standards. *State v. Shanks*, 2002 WI App 93, ¶ 6, 253 Wis. 2d 600, 644 N.W.2d 275, *review denied*, 2002 WI 111, 256 Wis. 2d 64, 650 N.W.2d 841 (Wis. July 26, 2002) (No. 01–1372–CR). The Town and the County complied with these standards. We cannot substitute our opinion for that of the zoning authority. *Heaney*, 47 Wis. 2d at 307.

¶ 37. Step Now argues that the Town and the County did not specifically find and articulate that there was a public benefit in rezoning the land. However, Step Now has not provided any authority that a legislative body has to prove that it considered certain standards or employed specific magic words.

¶ 38. Step Now further argues that because the rezoning was inconsistent with the Plan, it constitutes illegal spot zoning. We disagree. We conclude that a land use plan is not mandatory but merely advisory.[2]

¶ 39. A comprehensive zoning plan is generally defined as

> one which controls the use of land and buildings throughout the entire territory of the municipality by dividing the territory into use districts permanent in

---

[2] There is significant disagreement as to whether or not the Town formally adopted its Land Use Plan. Step Now argues that the Town adopted the Plan while Algoma argues that there is a genuine issue of fact as to the status of the Plan. Because of this factual dispute, it is hard to understand why all parties filed motions for summary judgment alleging no genuine issue of material facts or why this matter was resolved upon summary judgment. We assume without deciding that the Plan was, in fact, formally adopted by the Town since we conclude that even with formal adoption, the Land Use Plan is merely advisory.

683

character according to present and probable future conditions. It directs so far as possible the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of individual property owners. It has been said that it is easier to determine what a comprehensive plan is not, than to define what it is; certainly, however, a comprehensive plan should embrace substantially all the area to be zoned, and should contemplate permanence, stability, and finality of design.

*Heaney*, 47 Wis. 2d at 309 (citation omitted).[3] Commentators have defined a comprehensive plan as a guide to community development. *Bell v. City of Elkhorn*, 122 Wis. 2d 558, 564, 364 N.W.2d 144 (1985). It is "a general plan to control and direct the use and development of property in a municipality, or a large part thereof, by dividing it into districts according to the present and potential use of the property." *Id.* (citation omitted).

¶ 40. The objectives sought to be achieved through the development of a comprehensive plan include: (1) improving the physical environment of the community; (2) promoting the public interest; (3) facilitating the implementation of community policies on physical development; (4) effecting political and technical coordination in community development; (5)

---

[3] A comprehensive master plan is statutorily defined in Wis. Stat. § 66.1001(1)(a) as:

1. For a county, a development plan that is prepared or amended under s. 59.69(2) or (3).

2. For a city or a village, or for a town that exercises village powers under s. 60.22(3), a master plan that is adopted or amended under s. 62.23(2) or (3).

3. For a regional planning commission, a master plan that is adopted or amended under s. 66.0309(8), (9) or (10).

injecting long-range considerations into the determination of short-range actions; and (6) bringing professional and technical knowledge to bear on the making of political decisions concerning the physical development of the community. *Id.* at 565.

¶ 41. In *Bell*, the Wisconsin Supreme Court addressed whether the existence of a formal comprehensive plan is a condition precedent to the adoption of a valid zoning ordinance. *Id.* at 563. The *Bell* court turned to WIS. STAT. § 62.23 which sets forth Wisconsin's statutory scheme for city planning. *Bell*, 122 Wis. 2d at 563. Section 62.23(1) provides that a city may create a city plan commission. *Bell*, 122 Wis. 2d at 563. It is the commission's "function and duty . . . to make and adopt a master plan for the physical development of the municipality . . . . The master plan, with the accompanying maps, plats, charts and descriptive and explanatory matter, shall show the commission's recommendations for such physical development, and may include a comprehensive zoning plan." *Id.* (citing WIS. STAT. § 62.23(2) (1985–86)).

¶ 42. The *Bell* court next addressed WIS. STAT. § 62.23(7)(a), which gives the city council the power to enact zoning ordinances "[f]or the purpose of promoting health, safety, morals or the general welfare of the community." *Bell*, 122 Wis. 2d at 563. Section 62.23(7)(c) requires that "[s]uch (zoning) regulations shall be made in accordance with a comprehensive plan . . . ." *Bell*, 122 Wis. 2d at 563–64.

¶ 43. The requirement contained in many states' zoning statutes that zoning be "in accordance with a comprehensive plan" originated in the Standard Zoning Enabling Act. *Id.* at 565. An explanatory note to this section of the Act stated, "This will prevent haphazard

685

or piecemeal zoning. No zoning should be done without such a comprehensive study." *Id.* (citation omitted).

¶ 44. However, the *Bell* court concluded that there was no requirement in Wis. Stat. § 62.23 that a plan be written or be anything beyond "a generalized conception by the members of the board as to how the districts in the township shall be . . . used." *Bell,* 122 Wis. 2d at 565–66 (citation omitted). Instead, the Wisconsin Supreme Court concluded, the purpose of a comprehensive plan is to provide an orderly method of land use regulation for the community that can be accomplished by the zoning ordinance itself without the need of a separate document labeled "Comprehensive Plan." *Id.* at 567. The *Bell* court further concluded that the clear intent of the legislature in enacting § 62.23 was to have cities design a general plan to control the use of property in the community which could be accomplished with or without the advice of a plan commission because the creation of the plan commission is at the discretion of the governing body of the community. *Bell,* 122 Wis. 2d at 567; *see also* § 62.23(1)(a).

¶ 45. The Wisconsin Supreme Court concluded that a city need not adopt a separate comprehensive plan document as a condition precedent to enacting a zoning ordinance. *Bell,* 122 Wis. 2d at 567. If a comprehensive land use plan is not mandatory, then it stands to reason that once a comprehensive land use plan is enacted, the plan is merely advisory. In essence, a comprehensive plan is merely a guide to community development. *Id.* at 564.

¶ 46. Wisconsin Stat. § 66.1001(3)(b) supports our conclusion that a land use plan is simply advisory. Section 66.1001 addresses comprehensive planning and states, in relevant part:

**(3)** ACTIONS, PROCEDURES THAT MUST BE CONSISTENT WITH COMPREHENSIVE PLANS. *Beginning on January 1, 2010, any program or action of a local governmental unit that affects land use shall be consistent with that local governmental unit's comprehensive plan,* including all of the following:

(a) Municipal incorporation procedures under s. 66.0201, 66.0203 or 66.0215.

(b) Annexation procedures under s. 66.0217, 66.0219 or 66.0223.

(c) Cooperative boundary agreements entered into under s. 66.0307.

(d) Consolidation of territory under s. 66.0229.

(e) Detachment of territory under s. 66.0227.

(f) Municipal boundary agreements fixed by judgment under s. 66.0225.

(g) Official mapping established or amended under s. 62.23(6).

(h) Local subdivision regulation under s. 236.45 or 236.46.

(i) Extraterritorial plat review within a city's or village's extraterritorial plat approval jurisdiction, as is defined in s. 236.02(5).

(j) County zoning ordinances enacted or amended under s. 59.69.

(k) City or village zoning ordinances enacted or amended under s. 62.23(7).

(L) Town zoning ordinances enacted or amended under s. 60.61 or 60.62.

687

(m) An improvement of a transportation facility that is undertaken under s. 84.185.

(n) Agricultural preservation plans that are prepared or revised under subch. IV of ch. 91.

(o) Impact fee ordinances that are enacted or amended under s. 66.0617.

(p) Land acquisition for recreational lands and parks under s. 23.09(20).

(q) Zoning of shorelands or wetlands in shorelands under s. 59.692, 61.351 or 62.231.

(r) Construction site erosion control and storm water management zoning under s. 59.693, 61.354 or 62.234.

(s) Any other ordinance, plan or regulation of a local governmental unit that relates to land use. (Emphasis added.)

A logical interpretation of this statute is that until January 1, 2010, a local governmental unit's program or action affecting land use does not need to be consistent with that local governmental unit's comprehensive plan and thus currently a land use plan is merely advisory.

¶ 47. Step Now further argues that the rezoning was a joint effort by the Town and the applicants and that the relationship between the Town and the applicants implicates citizens' due process rights. Step Now places much emphasis on the fact that Algoma arranged a tour of an existing plant in Minnesota and arranged for informational meetings where Algoma representatives would be available to provide information and answer questions. This is without merit.

¶ 48. Step Now cites no authority for the proposition that in making a legislative decision, a munici-

pality that gathers all possible information and better educates itself and its citizens about the ramifications of a zoning decision is abusing its discretion or acting in excess of its power. The primary authority relied upon by Step Now in its allegations of improper bias, *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 498 N.W.2d 842 (1993), does not support its contention; *Marris* addressed a property owner's request for approval for a proposed change in the use of a building, *id.* at 19–20, and, as Step Now acknowledges, involved a quasi-judicial proceeding, not a discretionary legislative decision such as the one before us here. The Potratz rezoning was not illegal spot zoning.

### Cross-Appeal

¶ 49. Step Now's cross-appeal alleges the following: the Potratz rezoning is null and void because the Town failed to properly publish the notices for the public hearings and then failed to provide a properly noticed public hearing after the application for rezoning was substantially amended; the Potratz rezoning is invalid because the Town violated its own zoning ordinance when it failed to comply with Wis. Stat. § 91.77; and because the Town issued the building permit in error, it is null and void.

¶ 50. Step Now argues, as some of the cross-respondents appear to concede, that these issues are properly addressed via summary judgment methodology. However, these claims of procedural due process violations were raised in the amended complaint, and addressed at the September 30, 2002 hearing, in the context of certiorari review. We are not required to address the appellate issues as structured by a party. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555,

689

564, 261 N.W.2d 147 (1978). Thus, the appropriate standard of review is that of certiorari.

¶ 51. The traditional standards of common law certiorari review are (1) whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *Hanlon v. Town of Milton*, 2000 WI 61, ¶ 23, 235 Wis. 2d 597, 612 N.W.2d 44.

¶ 52. Step Now first argues that the Town violated its own zoning ordinance when it failed to properly publish the notices for the public hearings and thus the Potratz rezoning is null and void. We disagree that this nullifies the rezoning.

¶ 53. All parties seem to agree that the Town published notices for the PZC's January 3, 2002 hearing that complied with the requirements of WIS. STAT. §§ 62.23(7)(d), 985.01(1m) and 985.07(2). The Town held three informational meetings to inform its citizens about the potential rezoning, informational meetings that were not required by either statute or ordinance. The public hearing was held by the PZC on January 3, 2002. The notice of this hearing was published once during each of the two weeks, one week apart, prior to the public hearing. A class 2 notice of the PZC public hearing on the Potratz rezoning was published in the OSHKOSH NORTHWESTERN on December 20 and 27, 2001, fourteen and seven days, respectively, prior to the hearing.

¶ 54. Section 20(a) of the Town ordinance on amendments provides, in relevant part, as follows:

690

The Town Board may from time to time on its own motion or on petition after first submitting the proposal to the Plan Commission, amend, supplement or change the district boundaries or the regulations herein or subsequently established upon giving at least ten (10) days notice, by publication in the official paper at least three times during the preceding thirty (30) days of the proposed amendment, supplement or change and hearing thereon, and opportunity to any person interested to be heard.

Thus, the Town's notice requirements require three publications, all three of which must be at least ten days prior to the meeting. Here, the notice was published only twice, fourteen and seven days prior to the hearing. Step Now argues that despite the compliance with statutory notice requirements, the Town's failure to follow its own publication requirements mandates invalidation of the rezoning. We disagree.

¶ 55. The cases cited by Step Now in support of this proposition are not directly on point. In *Ledger v. City of Waupaca Board of Appeals*, 146 Wis. 2d 256, 430 N.W.2d 370 (Ct. App. 1988), a property owner filed a petition to rezone his property; the petition to rezone was approved conditioned upon compliance with the plans as submitted. *Id.* at 258–59. However, the owner sold the property to a new owner without ever completing the original proposed project. *Id.* at 259. The new owner wanted to proceed with a similar project and requested a permit to do so. *Id.* The building inspector asked the city attorney if a permit could be issued in light of the conditions of the previous zoning ordinance. *Id.* The city attorney informed the inspector that a permit could be issued because, in his opinion, the conditions of the previous zoning ordinance were invalid. *Id.*

¶ 56. Area residents appealed to the zoning board of appeals, which affirmed the inspector's decision to issue a building permit without further discussion or comment. *Id.* at 260. The residents sought judicial review; the circuit court agreed with the board but we reversed. *Id.* at 258. *Ledger* was not an action to declare an ordinance void or unenforceable but was certiorari review of a board's decision to affirm issuance of a building permit, i.e., whether the board had the legal authority to rule that a portion of a duly-enacted city rezoning ordinance was invalid and unenforceable. *Id.* at 260–62. That is not the case here. The Town did not rule that a portion of a duly-enacted ordinance was invalid and unenforceable.

¶ 57. *State ex rel. Meeks v. Gagnon*, 95 Wis. 2d 115, 289 N.W.2d 357 (Ct. App. 1980), has nothing to do with zoning but is an action challenging prison discipline. In *Gloudeman v. City of St. Francis*, 143 Wis. 2d 780, 422 N.W.2d 864 (Ct. App. 1988), the local municipality followed its own notice provisions; however, those local notice requirements failed to comply with the enabling statute and thus the municipality failed to comply with state notice requirements. *Id.* at 786, 788. We have the exact opposite situation here: the Town complied with all state notice requirements but failed to comply with its local ordinance requirements.

■■■■■■■■

¶ 58. The purpose of notice requirements is to provide the public with a right to appear and voice objections to the proposed ordinance. *See id.* at 784. Notice requirements are generally intended to provide an accurate statement of the time, place and purpose of a public hearing to those entitled to such notice so that they may attend the hearing and express their views. *Weber v. Town of Saukville*, 209 Wis. 2d 214, 234, 562

N.W.2d 412 (1997). Substantial compliance with statutory or ordinance requirements exists if the defective notice given fulfills the objective of the provisions and the record demonstrates that no one was prejudiced by the defect. *Id.* at 233.

¶ 59. Approximately 131 people signed the attendance sheet at the PZC hearing and numerous people were there to offer their opinion both for and against the proposed rezoning. Nowhere does Step Now argue that anyone was prejudiced by the Town's failure to comply with its own notice requirements. We conclude that the failure to comply with the Town's notice requirements, when all statutory notice requirements were met, did not defeat the purpose of the ordinance's notice provision. "[S]uch a defect is of little consequence in this case, and therefore provides an insufficient basis for concluding that the purpose of the ordinance's notice provisions was left unfulfilled." *Id.* at 234–35.

¶ 60. Step Now also argues that because the Town failed to publish any notice prior to the January 14, 2002 Town Board public hearing, the rezoning is invalid. *Oliveira v. City of Milwaukee*, 2001 WI 27, 242 Wis. 2d 1, 624 N.W.2d 117, refutes this argument.

¶ 61. In *Oliveira*, the plaintiffs challenged a rezoning of a parcel of land that would allow construction of a large grocery store. *Id.* at ¶ 2. At issue was the Milwaukee common council's enactment of two zoning amendments that had initially been referred to the common council's zoning committee for a hearing. *Id.* at ¶ 3. The hearing before the zoning committee was properly noticed under Wis. Stat. § 62.23(7)(d)2. *Oliveira*, 2001 WI 27 at ¶ 3. The zoning committee did not act on the proposed zoning amendments and the common council president introduced duplicate zoning

693

amendments and referred them to a different committee. *Id*. The question before the court was whether notices of a hearing on the proposed zoning amendments before the zoning committee were sufficient to enable the common council to enact duplicate zoning amendments referred to a different committee without additional notices. *Id*.

¶ 62. The Wisconsin Supreme Court concluded that the Milwaukee common council did not violate Wis. Stat. § 62.23(7)(d)2 or constitutional guarantees when it failed to give additional § 62.23(7)(d)2 notices relating to the duplicate zoning amendments. *Oliveira*, 2001 WI 27 at ¶ 4. No substantive difference existed between the original zoning amendments for which notices were given and the duplicate files containing the proposed zoning amendments that were adopted. *Id*. at ¶ 32. The duplicate zoning amendments affected the same people in the same manner as the original zoning amendments; a second § 62.23(7)(d)2 notice for a hearing before a different committee would only provide the same people the opportunity to express the same views regarding the proposed zoning amendments. *Oliveira*, 2001 WI 27 at ¶ 32. Accordingly, the *Oliveira* court concluded that a second § 62.23(7)(d)2 notice was not required. *Oliveira*, 2001 WI 27 at ¶ 32.

¶ 63. Here, a second Wis. Stat. § 62.23(7)(d)2 notice was not required. There was no substantive difference between the proposed zoning amendment before the PZC and the Town. The proposal before the PZC and before the Town affected the same people in the same manner and a second notice would have provided the same people the opportunity to express the same views. All parties in attendance at the PZC hearing knew it was simply to make a recommendation to the Town Board, which would make the ultimate decision

on the proposed rezoning. The Town Board's agenda and amended agenda for the January 14, 2002 meeting was posted. Meeting notices and amended notices were posted on January 9, 2002, and January 10, 2002, respectively, at the Town Hall, the Pickett Post Office and the Pickett Cooperative. Numerous people appeared at the Town Board's meeting to express their opinions on this issue. Step Now does not allege that anyone was prejudiced by the Town's failure to publish notice prior to the Town Board hearing. Section 62.23(7) "shall be liberally construed in favor of the city and as minimum requirements adopted for the purposes stated." Sec. 62.23(7)(a); *see also Oliveira*, 2001 WI 27 at ¶ 21. Here, compliance with state statute requirements was more than sufficient to satisfy due process concerns.

¶ 64. Step Now further argues that the Potratz rezoning is invalid because the Town failed to provide a properly noticed public hearing after the application for rezoning was substantially amended. We disagree that the application was substantially amended.

¶ 65. A change to the proposed amendment of a zoning ordinance must be substantial to require reactivation of the procedural process. *Herdeman v. City of Muskego*, 116 Wis. 2d 687, 690, 343 N.W.2d 814 (Ct. App. 1983); *see also Oliveira*, 2001 WI 27 at ¶ 28. To require a new notice and public hearing for every proposed change, no matter how small, would heavily burden the legislative process. *Herdeman*, 116 Wis. 2d at 690.

¶ 66. One of the purposes of a public hearing is to inform the members of the municipal legislative body. *Id.* Where changes are made due to testimony adduced at such a hearing, it usually will not be necessary to hold a second hearing on the revised proposal. *Id.* Whether a second hearing is necessary will depend upon the nature and extent of the posthearing revision. *Id.* A second notice is not required if the amendment does not alter the "fundamental character of the proposal." *Oliveira,* 2001 WI 27 at ¶ 29 (citing *Herdeman,* 116 Wis. 2d at 691). *Herdeman* reasoned as follows:

> We are persuaded by the logic of these treatises and adopt the "substantial change" requirement.
>
> The Muskego Planning Commission had already made its recommendation approving the rezoning of the land in question. Notice had been sent. The amendment simply decreased the amount of land that was going to be rezoned. The reduction in the size of the area to be rezoned in this case is not a substantial change in the proposed ordinance as originally advertised because the fundamental character of the proposal remained unchanged; no new rights were created.
>
> It is also important to note that the amendment did not affect different landowners nor did it affect the same landowners in a different way. An additional public hearing could only have resulted in repetitive statements by the same parties. Nothing would have been accomplished by requiring another notice and public hearing, except delay.

*Herdeman,* 116 Wis. 2d. at 690–91.

¶ 67. The addition to the proposed zoning amendment was added, at the Potratzes' request, and was a reverter clause which read as follows:

> WHEREAS, after public notice and hearing, the Town of Utica Plan Commission has determined that it is in the interest of the public health, safety and welfare to rezone the property from Agricultural to Industrial provided, however, that the property revert back to Agricultural if the required federal and state agency approvals, permits and favorable test results have not been obtained in connection with the property and the proposed plant within eighteen (18) months of the date of adoption of this amendatory ordinance.

The reverter clause did not constitute a substantial change requiring additional notice because the fundamental character of the proposal remained unchanged; no new rights were created. *See id.* at 691. The amendment did not affect different landowners nor did it affect the same landowners in a different way. *See id.* An additional public hearing could have only resulted in repetitive statements by the same parties. *See id.* Nothing would have been accomplished by requiring another notice and public hearing except delay. *See id.*

¶ 68. Step Now also argues that the Potratz rezoning was invalid because the Town violated it own zoning ordinance when it failed to comply with Wis. Stat. § 91.77 as explicitly incorporated into its own zoning ordinance. Step Now argues that sec. 9(b) of the Town's Zoning Ordinance incorporates Wis. Stat. ch. 91 in its entirety into the Zoning Ordinance. We disagree.

¶ 69. The test of sec. 9(b) of the Zoning Ordinance is not a blanket adoption of Wis. Stat. ch. 91. Section 9(b).reads as follows:

> No use which is a prohibited use under Chapter 91 of the Wisconsin Statutes, which is incorporated herein by reference, including all future amendments thereto, shall be permitted.

This does not incorporate all of ch. 91 into the ordinance; a logical read of this provision is that only the prohibited use sections of ch. 91 (portions of WIS. STAT. § 91.75 that deal with prohibited uses in an exclusive agricultural district) are incorporated. Furthermore, Step Now has not provided any authority for its contention that a legislative body's failure to provide formal WIS. STAT. § 91.77 findings justifies invalidation of the rezoning.

■■

¶ 70. Finally, Step Now argues that because the Town issued the building permit for the ethanol plant in error, the permit is null and void. We disagree.

¶ 71. The basis for Step Now's argument is that the January 19, 2002 permit for construction of an ethanol plant was issued in error because at the time, the land was zoned Agricultural and the zoning category of the plant is Industrial. Step Now also argues that the building permit was issued in error because the permit application was incomplete; according to Step Now, sec. 21(b)(4) of the Town Zoning Ordinance requires a site plan, in duplicate, drawn to scale, showing all buildings and no site plans were submitted with the permit application.

¶ 72. The only case cited by Step Now in support of these contentions is *Ledger*, 146 Wis. 2d at 256. The question before the *Ledger* court was whether the zoning board had the legal authority to rule that a portion of a duly-enacted city rezoning ordinance was invalid and unenforceable. *Id.* at 260–62. That is not the case here. We decline to address issues inadequately supported by legal authority. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

## CONCLUSION

¶ 73. We conclude that the Potratz rezoning from Agricultural to Industrial was not illegal spot zoning. We further conclude that a land use plan is merely advisory, not mandatory. We therefore reverse this portion of the judgment and remand this to the circuit court with directions to reinstate the Town's and County's decisions.

¶ 74. However, we also conclude that the Town's failure to comply with its own notice requirements, when all statutory notice requirements were met, is insufficient to nullify the rezoning and no notice was required prior to the Town Board's hearing. Furthermore, we decide that a second WIS. STAT. § 62.23(7)(d)2 notice was not required because the application for rezoning was not substantially amended. Finally, the building permit was not issued in error. We therefore affirm this portion of the judgment.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.